[No. 22168.   Department One.   March 3, 1931.]

JOHN HAAN *et al., Respondents,* v. CHARLES HEATH
*et al., Appellants.*[1]

*Hugo Luhman* and *H. J. Snively,* for appellants.
*Udell & Mitchell,* for respondents.

MILLARD, J.—This is an action to recover forty-five
hundred dollars, alleged to be the amount plaintiffs'
property in the city of Yakima depreciated in value as
a result of the construction and maintenance by de-
fendants of an undertaking establishment adjoining
that property.   The trial resulted in a verdict for the
plaintiffs in the sum of five hundred dollars.   Defend-
ants' motion for judgment notwithstanding the verdict
was denied, and judgment was entered on the verdict.
Defendants appealed.

[1]Reported in 296 Pac. 816.

The sole contention of counsel for appellants is that the evidence adduced precluded any right of the respondents to recover, therefore the motion for judgment notwithstanding the verdict should have been granted.

■ Such a motion, as we have uniformly held, can not be granted, unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict.

"The basis of the motion must be such a state of facts as warrants the granting of the motion without trespassing by the court on the province of the jury." *Lee v. Gorman Packing Corporation,* 154 Wash. 376, 282 Pac. 205.

■ It fairly appears from the evidence that respondents have, for approximately fifteen years, been the owners of a residence in an exclusive residential section of the city of Yakima, located on the west side of Ninth avenue. No stores or other places of business are in the vicinity of that residence. A lot one hundred feet in width, fronting on Ninth avenue, on the southwest corner of Ninth and Yakima avenues was vacant until 1927, when it was purchased by the appellants.

In April, 1927, the appellants commenced the construction, which was completed in June, 1927, on that lot, of an undertaking establishment. Immediately north of, and adjoining, the lot of appellants, is the lot of respondents, on which is situated the respondents' home. A driveway of the appellants is between their property and that of the respondents. At the extreme west end of the driveway, is appellants' garage. Commencing at the east end or doorway of the garage, and on the property line dividing the properties of the appellants and the respondents, is a con-

crete wall, eight feet high at the east end of the garage and tapering down to four feet in height at the end of the lot, or at the sidewalk on Ninth avenue. The south side of respondents' home is approximately fifteen feet north of the wall.

From the windows of the second floor of respondents' home, one may see the hearse or other vehicles on the driveway, and can also see the bodies (which are covered) carried into, and the caskets carried from, the undertaking establishment. A view of the driveway from the first floor windows of respondents' home is excluded by the wall.

Coincident with the construction of the undertaking establishment, respondents removed from their home, in which they have had a number of tenants from that time until the date of the trial. Respondents were never in the house at any time when bodies were brought to the establishment next door, and they have never been in their home at night since the appellants commenced operations. Respondent Haan was in his home two or three times while funerals were held at the undertaking establishment. Short periods of time intervened between the loss of a tenant and the rental of respondents' home to another tenant. At the time of the trial, they had a tenant in their house.

One of their former tenants, who was corroborated by his wife, testified as to quite a number of funerals weekly; that he saw bodies, which were covered, brought to the undertaker's at all hours of the day and night; that, on the front lawn of the undertaker's, he saw the photographing of a dead person; that when the wind would be blowing towards respondents' property disagreeable disinfectant odors would annoy them; that he was further annoyed by the opening and closing of the garage doors in a noisy manner day and

night, such noises being occasioned by the coming at all hours of the vehicles carrying dead bodies.

There was competent testimony that the value of respondents' property was between five and six thousand dollars immediately preceding the opening of the undertaking establishment; that, by reason of the location and maintenance of the undertaking establishment in that residential district adjoining the respondents' residence, and because of the other facts recited, the value of the property had depreciated twenty-two hundred dollars. Respondents admitted that the undertaking establishment was operated according to modern methods.

Though an undertaking establishment is not of itself a nuisance *per se*, it may, by reason of surrounding circumstances, become one. It may constitute a nuisance by reason of its location. A perfectly lawful business in its proper location might become a nuisance in an improper location.

"Whether the business of preparing dead bodies for burial is to be deemed a nuisance depends on the locality in which it is carried on and the methods employed by the proprietor thereof." 20 R. C. L. 455, § 70.

There was testimony that the undertaking establishment was located in an exclusive residential district. That the jury so believed, is reflected by their verdict, hence the question as to the character of the neighborhood in which the business was maintained is foreclosed.

Appellants erected and maintained their undertaking establishment in an exclusive residential district, a neighborhood devoted exclusively to homes. Obnoxious odors escaped from appellants' establishment, doors were opened and closed frequently in a noisy manner day and night, and numerous funerals were

conducted by appellants. These facts, it was testified, deprived respondents and their tenants of that repose and comfort to which they were entitled, and caused the property of respondents to depreciate approximately twenty-two hundred dollars in value.

We are mindful of the right to engage in a lawful business, and that the undertaking business is a lawful and necessary one; however, we should not lose sight of the right of the citizen to be protected in his home—his right to the enjoyment there of that repose and comfort that are inherently his. The location and maintenance of the appellants' undertaking establishment adjoining respondents' home in a strictly residential district, together with other facts stated above, have deprived the home of the respondents of the comfort and repose to which they are entitled. Also, the respondents have been subjected to financial loss thereby, the depreciation in value of their property.

In *Densmore v. Evergreen Camp No. 147 W. O. W.,* 61 Wash. 230, 112 Pac. 255, Ann. Cas. 1912B 1206, 31 L. R. A. (N. S.) 608, injunctive relief was granted, not upon the ground that the undertaking business was a nuisance *per se,* but that, by reason of its location and the surrounding conditions (danger of transmittal of disease by flies that came out of the unscreened establishment, etc.), it might be, or become, a nuisance. Stressing the tendency of undertaking establishments in residential districts to depress the minds of normal persons, thereby weakening their physical resistance and rendering them more susceptible to contagion and disease, we said:

"For in this age, when population is becoming more and more congested in the cities, it would be manifestly unfair to grant injunctive relief only in those cases where the object attacked was a nuisance *per se,* when other circumstances or conditions intervene which

might tend to destroy the repose and comfort of a part of a city or town given over to homes. In this case, as in that, the element of comfort and repose in the enjoyment of the home becomes an essential element of our inquiry. For it is not only shown by the evidence, but it may be accepted as within the common knowledge of man, that the immediate presence of those mute reminders of mortality, the hearse, the chapel, the taking in and carrying out of bodies, the knowledge that within a few feet of the windows of one's dwelling house where the family sleep and eat and spend their leisure hours, autopsies are going on, that the dead are there, cannot help but have a depressing effect upon the mind of the average person, weakening, as the testimony shows, his physical resistance and rendering him more susceptible to contagion and disease.''

That case was quoted with approval by the court in *Saier v. Joy*, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A 825, in which the opening of a morgue and undertaking establishment in a residence district, to the depreciation of the value of the neighboring property, was enjoined as a nuisance. The rule there followed is applicable to the case at bar. The court said:

''We cannot overlook the right to engage in a lawful trade, nor the fact that the conduct of the undertaking business is not only lawful but highly necessary, nor that it is not a nuisance per se. Nor can we overlook the right of the citizen to be protected in his home, and his right to the enjoyment there of that repose and comfort that are inherently his. The question here is not the restraining of defendants' business, but the restraint of its intrusion into a long-established and strictly residential district. . . . We are persuaded that the correct result was reached and the proper rule announced by the Washington court. . . . We have here a case of the maintenance of a business which, while not a nuisance per se, is such as to these plaintiffs by reason of its location in a strictly residential district,—a business which will cause depression to the normal person, lowering his vitality, rendering him more susceptible to disease, and depriving his home of

the comfort, repose and enjoyment to which he is entitled. Coupled with this is the substantial financial loss, due to the depreciation in value of his property, and the strong probability that added to the other discomforts he will be called upon to suffer will be noxious odors during the summer months.''

The case of *Rea v. Tacoma Mausoleum Assn.*, 103 Wash. 429, 174 Pac. 961, cited by appellants, in which we held that an injunction would not issue against a business causing a decline in adjacent property values, accompanied by mere sentimental objections, without more, is distinguishable on the facts from the case at bar. In that case, the appellants' residence property, which adjoined the cemetery property, had been in that location for many years, during which time the cemetery had been maintained. The mausoleum was built in a long-established cemetery, a location devoted to the burial of the dead. We said:

''A mausoleum would seem to be no more suggestive of the presence of the dead than the ordinary tombstones so common in our cemeteries.''

The rule there applied is not applicable to the case at bar. The facts in that case and in the case at bar are not at all similar.

The respondents were entitled to damages, the true measure of which was the depreciation in the market value of their property, caused by the maintenance of the undertaking establishment. That question was properly submitted to the jury.

The judgment is affirmed.

TOLMAN, C. J. PARKER, BEALS, and MITCHELL, JJ., concur.