3 So.2d 281

**MOSS v. BURKE & TROTTI, Inc.**

No. 30789.

May 26, 1941.

Rehearing Denied June 30, 1941.

J. A. Williams and C. V. Pattison, both of Lake Charles, for plaintiff and appellant.

McCoy & King, of Lake Charles, for defendant and appellee.

FOURNET, Justice.

This is a suit by a property owner to enjoin the defendant from conducting an undertaking and embalming establishment across the street from his property, on the ground that the same is a nuisance and, as such, should be abated. The plaintiff also seeks to recover damages in the sum of $8,525.48 for loss of rents and depreciation in the value of his property.

The defense is that defendant's establishment is not only located in a district that has been zoned for business purposes, but that the business of undertaking and embalming not being a nuisance per se, defendant cannot be enjoined from operating the same, particularly since it has at all times been conducted in a proper manner, with the use of the most modern and efficient methods known to the trade. The defendant further pleaded the prescription of one year against all claims for damages.

The case was tried on the issues as thus made up and the plaintiff's demands were rejected. From this judgment he prosecutes this appeal.

After the case was lodged here on appeal, the defendant and appellee filed a plea of abatement, alleging therein that on March 20, 1933, plaintiff and appellant disposed of all of his right, title, and interest in the property alleged to be affected by defendant's business, and attaching thereto a certified copy of the sheriff's deed in the foreclosure proceedings by which he was divested of the property.

The late lamented Jerry Cline, who was the presiding judge on the trial of this case, has, in his written reasons for judgment, accurately stated the facts and, in disposing of the issues involved, given a complete and thorough analysis of the pertinent authorities and their application to the case at bar. We, therefore, quote with approval his opinion in full:

"The law issues in this case involve broadly the rights and obligations toward each other of adjacent property owners, in the use to which they may put their property. The factual issues involve specifically the questions, first whether the undertaking parlors of the defendant company are improperly located in a district set apart by law or by custom as residential, and second, whether irrespective of the residential character of the neighborhood, the undertaking business there carried on is or has been conducted in such a manner as to create an abatable nuisance. An additional issue is raised by a plea that any remedy under the first fact issue is barred by prescription.

"The plaintiff is owner, by purchase in June, 1923, of two brick bungalow residence properties, fronting north on Iris Street, between Hodges and Cole Streets. The defendant company is owner, by ac-

quirement in December, 1925, of property known as No. 428 Kirby Street, and since approximately that date, has been conducting there an undertaking and embalming business. This property extends north and south through the block, so that the south front abuts on Iris Street, directly opposite the plaintiff's bungalow property. The grounds are spacious, and the funeral home building somewhat pretentious. From the Kirby Street front, the property retains the appearance of a residence equal in taste, comfort, and value, to the better class of homes in the city. The Iris Street front bears the usual appearance of the rear portion of residential property. Two buildings, used as garages and storage rooms for undertaking goods occupy the southeast and southwest corners, while between them an open space of fifty or sixty feet is used for passage way for trucks, ambulances and hearses, and presents a view from the bungalows of the rear door of the main building, through which bodies are received, for embalming in the first room entered.

"The complaint of the plaintiff is that the establishment of a funeral home and embalming business in a section alleged to be residential, and in close proximity to his property has depreciated its value; that the frequent coming and going of ambulances and hearses, with dead bodies, and their removal into the funeral home in full view of those occupying the front rooms and galleries of his bungalows, together with the odors and sounds connected with such melancholy scenes, destroy or largely decrease their desirability as homes, and thus affect their rental value.

"Reminders of mortality are seldom pleasant to mortals; and to those not inured by habit and experience, scenes of death are tragical. Associated closely and often with the ordinary scenes of the home, they may well be destructive of the peace and comfort belonging of right to every family.

"On the other hand, the decent care and disposal of our bodies after death must be attended to; and persons and places must be dedicated to this purpose. The service, the equipment and the location of the property used in such an essential business, must conform to the community ideals of decorum and of respect to the dead.

"Doubtless it would be difficult, if not impossible, to state a rule by which this conflict between the interests of the individual home owner and the community necessity of care for the dead may be wholly harmonized. The nearest approach is to say that the rule of reason should prevail; which means that each case must depend upon its own peculiar circumstances as to whether the use of certain property in a certain locality for the business of undertaking and embalming is reasonable or unreasonable. 29 Cyc. 1156.

"Some courts have held that the introduction of such business in a strictly residential section may be prevented; and it is said that judicial notice will be taken that the business will inevitably depreciate the value of residential property. Osborn v. City of Shreveport, 143 La. 932 [79 So. 542, 3 A.L.R. 955]; Blackburn v. Bishop [Tex.Civ.App.] 299 S.W. 264; Higgins v. Bloch [213 Ala. 209], 104 So. 429.

"On the other hand, it is held by many authorities that the business of an undertaker is not per se a nuisance, and that injury following therefrom must be physical rather than imaginative—there must be real discomfort or annoyance through the medium of the senses. Accordingly, the finding that residential property will be depreciated in value by the mere presence of such business, is not in itself sufficient to support a judgment for abatement. Dean v. Powell [Undertaking Co., 55 Cal.App. 545], 203 P. [1015], 1017, and citations; Dillon v. Moran [237 Mich. 130], 211 N.W. [67], 68; [L. D.] Pearson [& Son] v. Bonnie [209 Ky. 307], 272 S.W. 375 [43 A.L.R. 1166].

"A number of Louisiana cases in which the location and operation of cemeteries were at issue, were decided upon the principle that a lawful business, lawfully located, is never a nuisance per se. It is said that since cemeteries are an indispensable part of every city, their injurious effect upon property value is unavoidable. New Orleans v. Wardens, 11 La. [Ann. 244], 245; and citations; Musgrove v. Catholic Church of St. Louis, 10 La. [Ann. 431], 432.

"Morris v. Putsman, 166 La. [14], 18 [116 So. 577, 57 A.L.R. 939] in which many previous cases are cited, applies the same reasoning to other forms of business deemed essential to the industrial life of the community. To the same effect is Canone v. Pailet, 160 La. [159], 162 [106 So. 730].

"The principles do not apply fully, of course, in cities which have adopted the modern zoning methods; for the location of a business within a zone set apart by ordinance exclusively for homes, would be an unlawful location, and subject to abatement as of a nuisance per se. Such, in fact, was the situation in the case of Osborn v. Shreveport, 143 La. 932 [79 So. 542, 3 A.L.R. 955], cited above; and the decree there might well have been based wholly upon the right of a municipality to regulate reasonably the location in residential zones of future business described in the ordinance. Nor do the same principles apply in the case of a business which by its very nature, however carefully conducted, renders a neighborhood physically uncomfortable for residence. Noisome smells and crashing sounds assail the senses, and may be abated from a residential district, even though they emanate from a lawful business.

"In the present case, there is no ordinance of the City of Lake Charles prohibiting the location of undertaking parlors on the site purchased and used for that purpose by the defendant company. The location at that place was not, therefore, unlawful, and under the great weight of authority, both in Louisiana and in other jurisdictions, the business is not a nuisance per se.

"While we have thus far considered the law as to the establishment of an undertaking business within a district strictly residential, we have not considered the character of the district within which the business of the defendant company is located. The evidence of its character consists largely of photographs and a map of

the surroundings. The map shows the funeral home to be located near the center of the east half of a block longer east and west and shorter north and south than the average city block. With the exception of the defendant's property, and of a blacksmith shop in the northwest corner, the occupied portions of the block are used for residences and boarding houses. The west end of the block faces the rear of the City Hall property, which fronts on Ryan Street, the chief business street of the city. The east end of the block, showing vacant property except for the Field residence in the *southeast* corner, faces a grocery store on the corner of the adjoining block. The north side of the block fronts a block the south half of which is vacant except for the city fire station on the southwest corner, and a filling station, joined by a cleaning and dyeing establishment, on the southeast corner. The south side of the block fronts the block in which the two bungalows of the plaintiff are located, practically opposite the rear of the funeral home property.

"It will be seen that the block in question is in the second tier east of the business center of the city, and that there has been some extension of business eastward on Kirby Street, which borders this block on the north.

"A number of vacant lots appear in this block and in the block immediately north. Both blocks, fronting on opposite sides of Kirby Street, may be described as partly commercial and partly residential. Mrs. McMillan, a witness for the plaintiff, testifying by deposition, as owner of property adjoining that of defendant on the east, says:

" 'I have owned the property six years. It is unimproved property, too close in for residence and too far out for business.'

"To the situation thus tersely set out, the remarks of the court in [L. D.] Pearson [& Son] v. Bonnie [209 Ky. 307], 272 S.W. 375 [376, 43 A.L.R. 1166], cited above, are especially applicable.

" 'From these cases,' says the court, 'it is apparent that the location of a lawful business is not rendered inappropriate simply because the value of adjacent property is thereby depreciated and the sentiments and feelings of the owners are touched. One living in a city must necessarily submit to the annoyances which are incidental to city life and to risk the mark of trade and business progress. Without trade, the largest city would soon languish and become a mere shell. Without residents, it would be like the snow on the bosom of the desert. It is a difficult matter at all times to strike the true medium between the conflicting interests and tastes of people in a densely populated municipality. But at least until the state steps in and, acting for its people as a whole, undertakes under its police power to zone the city, the inhabitants thereof must risk the rise and fall in value of their property occasioned, not by a material invasion of its physical enjoyment, but only by the establishment of a business or building though accompanied by a sentimental repugnance to the same. It is, as so many questions in the law are, a matter of the balancing of conveniences, and a just regard to the needs of trade and

the rights of citizens require that the balance be struck at least here.'

 "From the authorities cited, we may gather the two principles which they may be said to establish:

"First: In the absence of legal zoning prohibition any business establishment may be established or located in a residential district, however it may affect the property values, unless by its very nature, its operation shall physically annoy the inhabitants.

"Second: A reasonable expansion of the business district of a growing community must be expected to encroach gradually beyond the borders of former residential property, whose owners are to suffer the resultant inconvenience or profit as an incident of residence in a city.

"Applying these rules to the present case, it must be found that the plaintiff cannot recover for damages to his property by reason of the location of the defendant company's business.

"But, an adjoining owner has the perpetual right to prevent a careless and annoying operation of a business, even though lawfully located, and this is one of the complaints here. The evidence does not sustain the claim. It would serve no useful purpose to quote the evidence at length. It is sufficient to say that the equipment and surroundings on the defendant company's property are of approved type, that sanitary requirements seem to be well observed; that none of the neighbors except those in one residence have complained of unpleasant sounds or odors, and none at all have complained recently; and

that the business appears to be conducted expertly and with a minimum of inconvenience to those residing in the neighborhood.

"It is not thought necessary to pass upon the plea of prescription, since the case will be disposed of by decree on the merits.

"It is therefore ordered, adjudged and decreed that the demands of the plaintiff be and they are rejected at his cost."

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.