GENE FUNNELL et al., Appellants, v. CITY OF CLEAR LAKE et al., Appellees.

No. 47157.

(Reported in 30 N. W. 2d 722)

FEBRUARY 10, 1948.

Boomhower & Boomhower, of Mason City, for appellants.

E. B. Stillman, of Clear Lake, and John A. Senneff, of Mason City, for appellees.

MULRONEY, C. J.—On September 9, 1935, a restricted residence district ordinance was enacted by the City of Clear Lake, Iowa. On November 29, 1946, the city council of Clear Lake granted a permit to the defendant Clear Lake Shipping Association to construct a stockyard and loading pens and an office on its property located within the restricted area, for the purpose of assembling and loading and shipping livestock. The plaintiffs, residents and property owners of other property in the restricted area, brought suit against the City and the shipping association claiming the council's action granting the permit was illegal and arbitrary and the petition alleged the erection of the stockyard in the immediate neighborhood of their property and within the restricted district, would constitute a nuisance. The prayer was for a decree holding that the granting of the permit was arbitrary, unlawful, illegal, and beyond the authority of the city council and for an injunction against the shipping association restraining them from erecting

the stockyard and loading pens. The trial court rendered decree in favor of defendants, and plaintiffs appeal.

The restricted residence district ordinance was enacted under the provisions of chapter 415, Code, 1946. There are three sections in this chapter. The first, or section 415.1, is the grant of power to cities to pass restricted residence district ordinance; the second, or 415.2, deals with the scope of the ordinance; and the third, or 415.3, deals with violations. We are concerned with section 415.2, or the scope of the ordinance which provides that in such ordinance the city "is * * * empowered to provide * * * that no building or other structure, except residences, schoolhouses, churches, and other similar structures, shall thereafter be erected, altered, or repaired, or occupied without first securing from the city or town council * * * a permit therefor * * *."

The ordinance in this case uses the identical language of the statute in providing that no building except residences, schoolhouses, churches or other similar structures, shall thereafter be erected, within said district, without first securing from the city council of such city a permit therefor.

The record shows that the restricted district is an area approximately two hundred and fifty yards east and west and about two hundred yards north and south. It is bounded by Main Street on the north and Bell Street on the south. Along the west side runs Victoria Avenue and along the east side there is the right of way of the Mason City and Clear Lake Railway. The only street running through the restricted area is Lindale Avenue, a fifty-foot north-and-south street located about one hundred and twenty feet west of the railroad. The two lots in question that are owned by the shipping association, and on which it proposes to build its stockyard and loading pens are Lots 11 and 12, located in the southeast corner of the restricted area. They are approximately 50 by 120 feet. They front on Lindale Avenue and extend east to a 14-foot alley that runs along the railroad right of way. Bell Street lies south of Lot 12.

The record shows that about a hundred yards west of the east boundary of the area, and fronting on Bell Street, there is located the Duesenberg machine shop and storage building,

and that Cerro Gordo county owns property on both sides of Lindale Avenue, and maintains a large building on the west side of the avenue where machinery is stored and a storage yard on the property east of Lindale Avenue for the storage of other equipment and supplies. The Duesenberg building is described by plaintiffs' witnesses as a large cement block building where machinery, such as tractors and earth moving machines, are stored and repaired.

The record shows that the railroad owned a stockyard on the south side of Bell Street, outside the restricted area, located on a spur track from the railroad, running off to the southwest. This stockyard is located a little west of Lots 11 and 12 but to the east of the stockyard, and directly south of Lots 11 and 12 across Bell Street there is a sales barn operated by James Pedelty where livestock is sold each week. The record shows that the shipping association has carried on its business for the past twenty-four years in the stockyard owned by the railroad. Its new location on Lots 11 and 12 would merely be across Bell Street and a little east of where it has been located. Its new location within the restricted district would actually place its stockyard farther away from many of the plaintiffs who live on Victoria Avenue.

The foregoing shows that Lots 11 and 12, while in the restricted district, are not actually in an area of Clear Lake where the property is devoted exclusively to residence purposes. Across Bell Street, south, there are the stockyard and sales barn previously described. Across Lindale Avenue, west, there is the large county shed, and west of the county shed is Duesenberg's shop. To the east of Lots 11 and 12 lies the railroad, and on the other side of the railroad there are many industrial plants. On the lot immediately to the north and along the railroad there is a small house owned by one Anderson who is not a party to this action. North of Anderson's place are five vacant lots, two of which are lots owned by the county and used for storage of lumber, culverts and snow fence.

■ I. We have held that the statute is not prohibitive but regulatory. City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N. W. 823, 23 A. L. R. 1322, Supplemental Opinion,

193 Iowa 1117, 188 N. W. 921, 23 A. L. R. 1337; Marquis v. City of Waterloo, 210 Iowa 439, 228 N. W. 870; Scott v. City of Waterloo, 223 Iowa 1169, 274 N. W. 897. The only question presented with respect to the legality of the permit is: Was the action of the city council in granting this permit to the shipping company to erect a stockyard and loading pens within the restricted area an unreasonable and arbitrary or capricious exercise of authority? The trial court held it was not. With this conclusion we agree. The record shows the councilmen viewed the area. One of them testified:

"I found that for the best interests of the town and for the community as a whole that it was the thing to do to grant the permit, that the site itself loaned itself to that type of building, it is not a residential location, the lots are not for residences at all. The lots are on a railroad siding which originally was intended for business purposes, there have been other businesses there before, I do not think that the district ever should have been put into a residential district, I think it was done in a great hurry and in haste about ten years ago. Clear Lake I think has got to expand in some direction and we certainly don't want it to expand into the Lake or around our shores, most businesses need a site for their warehouses, or rather a railroad to their storage place. There is no other place for storage place except downtown."

Another councilman testified:

"* * * as far as I am personally concerned as one of the councilmen, I weighed the arguments for and against the proposition, and felt personally that there were arguments, very good arguments, in favor of allowing the Shipping Association to come in there—probably the thing that determined me more than anything else was the fact that they had a very substantial business in Clear Lake, and while not a part of Clear Lake in the way of members, Clear Lake is dependent upon them, and as a councilman I gave that a great deal of consideration, while on the other hand I could not see where the thing dangered any of the owners. * * * we considered the fact that they were just going across the road, and that other properties in the

area, especially west of this location were all industrial * * * I do not think there is anything affecting the health of the people down there by allowing that to come over there in this new area any more so than there would be now. Nobody ever came down and objected to me while I have been on the Council as to the way the Clear Lake Shipping Association has conducted their business."

This was trackage property, adjacent to an industrial spur of the railroad. We think from the entire record the trial court was right in its conclusion that the issuance of the permit was not arbitrary or illegal.

II. The plaintiffs' other proposition is that the trial court erred in its decree wherein it held:

"That from the record it cannot be said that the business of the Clear Lake Shipping Association is a nuisance per se, nor does the record justify a finding in advance that the Clear Lake Shipping Association will so operate its business on Lots 11 and 12 * * * as to constitute the operation of said business as a nuisance."

The general rule is that stockyards are not nuisances per se. 46 C. J., Nuisances, section 282; annotation 26 A. L. R. 952; 50 Am. Jur., Stockyards, section 2.

The authorities all recognize that a stockyard may become a nuisance by reason of the manner in which it is conducted and there is authority that a stockyard in an exclusive residential district may constitute a nuisance, irrespective of the condition in which it is kept.

Plaintiffs cite authority for this last proposition, such as Eckels v. Weibley, 232 Pa. 547, 81 A. 645, 7 A. L. R. 739, granting an injunction against the threatened establishment of a large horse and cattle barn in an exclusive residential section of a city, and Jacobs & Wright v. Brigham, Tex. Civ. App., 227 S. W. 249, where the injunction was issued upon a jury finding that the stock barn was not within an industrial area or within reasonable proximity thereto.

Plaintiffs' argument is that even though a stockyard is not ordinarily a nuisance per se, the injunction should have

issued in this case because of its location in this residence district. But for the purpose of this portion of plaintiffs' case, where an injunction is sought on the ground of an anticipated nuisance, we look at the surrounding property, and consider its actual use. In other words, plaintiffs do not make out a case of a stockyard located in an exclusive residential district merely by showing a stockyard located within a restricted residential district, when the evidence shows the area surrounding the stockyard is largely devoted to industrial use.

As we have pointed out, the record here does not show that the area immediately adjacent to Lots 11 and 12 is exclusively devoted to residence purposes. It shows one residence immediately north but the owner of that house, Mr. Anderson, is not a plaintiff. Actually the old location in the railroad stockyard and the present sales barn of Pedelty would be closer to the property of at least eight of the eleven plaintiffs. As to the others, the proposed stockyard would only be the width of Bell Street closer than the present Clear Lake Auction Barn operated by Pedelty and the record shows the volume of stock handled by the Clear Lake Auction Barn is approximately nine to ten times the volume of stock handled by the shipping association.

The business of the shipping association consists of receiving hogs and cattle of its members, unloading, weighing, and reloading the same, and forwarding them to buyers principally in Mason City, Iowa. Only a few cattle are handled by the shipping association and these are usually disposed of at the auction barn and, except in very rare instances, the stock is sent out on the day it is received. The trial court found:

"That in the past there has been considerable noise, such as the squealing of pigs and bawling of cattle from the area of the Clear Lake stockyards, and that on some occasions this has occurred at night. That in the summertime there are some odors from the area of the Clear Lake stockyards, and that when the wind is in the south this odor drifts to the various residences occupied by the respective plaintiffs. That none of the plaintiffs have made any complaints about these conditions to any constituted authority prior to October, 1946. That there is no evidence of any epidemic of disease caused by the

142

operation of the businesses carried on in or about the Clear Lake stockyards, including the business of the defendant, Clear Lake Shipping Association."

The manager of the shipping association testified that the new building would be clean and sanitary and would be treated for the eradication of flies and that no accumulation of offal or filth would be permitted and that there would be facilities for washing and cleaning the waste in the building in the summertime and that the stock pens would be enclosed.

The trial court viewed the area. We think it was right in denying the injunction on the ground of nuisance, under the record in this case. The stockyard was not a nuisance per se. It was not proposed to erect it in a real residential district. Any possible resulting nuisance would depend on the manner of operation or the use made of the premises, and as a general rule courts will not interfere in advance when the nuisance is not inevitable but only contingent upon the manner of operation. See annotation 7 A. L. R. 749.

The decision of the trial court is affirmed.—Affirmed.

OLIVER, HALE, GARFIELD, MANTZ, SMITH, and HAYS, JJ., concur.

BLISS, J., takes no part.