EMERSON B. DAWSON et al., appellees, v. WELCH LAUFERSWEILER, appellant.

No. 47621.

(Reported in 43 N.W.2d 726)

AUGUST 1, 1950.

Kelleher & Kelleher and Helsell, Burnquist & Bradshaw, all of Fort Dodge, for appellant.

Breen, Breen & McCormick, Loth & Melton and Rider & Bastian, all of Fort Dodge, for appellees.

GARFIELD, C.J.—The question for decision is whether construction of a funeral home across the street from plaintiffs' residence should be enjoined as a threatened nuisance.

In September 1948, defendant, an undertaker, purchased for $20,000 lots 1, 2 and 3 in a certain block 16 in the city of Fort Dodge (1940 population 22,904). He then moved from the ground the old house there situated and excavated for a funeral home. The ground is the northwest corner of block 16 with a west frontage of one hundred fifty-two feet on 12th Street and a north frontage of one hundred thirty-nine feet on 3d Avenue South. Since 1937 plaintiffs Dr. and Mrs. Dawson have owned and occupied the large residence across 3d Avenue from defendant's property in the southwest corner of block 17 with a west frontage of seventy-six feet on 12th and a south frontage of one hundred eighty-seven feet on 3d Avenue.

Immediately north of the Dawson property are two houses, one behind the other, used for apartments, owned by the Howards, also named as plaintiffs. However, since they apparently took no part in the trial we refer to Dr. and Mrs. Dawson as if they were sole plaintiffs.

Upon removal of the old house and before excavation was completed in November 1948, this suit was started to enjoin construction of the funeral home. After trial the district court held the place would be a nuisance and enjoined its construction. Defendant has appealed. We review the case de novo. Rule 334, Rules of Civil Procedure.

The intersection of 3d Avenue South and 12th Street where plaintiffs live and defendant wants to build the funeral home is surrounded at varying distances by residences. Many of the older and better homes in the city are near by. However, the main business district to the north and west has expanded to within a block from this intersection.

Central Avenue which runs westerly from 12th Street is the principal business street. Other streets that parallel Central Avenue south of it are also called avenues and are numbered from north to south commencing with 1st Avenue South, also essentially a business street west of 12th. North and south streets are called streets and are numbered from west to east. Business establishments face most of 12th Street between the east end of Central Avenue and 2d Avenue South and also for a distance north from Central.

Along 12th Street south from 2d Avenue are mostly dwellings, single or multiple. However, at the south side of 2d Avenue and the east side of 12th—the northwest corner of block 17 in which plaintiffs live—there is a Standard Oil filling station. There is one house, used for apartments, between the front Howard house (next to plaintiffs') and the oil station. About two hundred feet east of this station is the Shimkat DeSoto-Plymouth garage with a north frontage of fifty feet on 2d Avenue. Between the oil station and the garage are two houses used for apartments and a row of nine single garages.

East of Shimkat's garage are three houses facing east on 13th Street. Roomers are kept in these houses. The southeast corner of block 17 is a playground belonging to a Catholic church

and school which are across 13th Street in block 12, east of 17. Adjoining the playground is a row of ten individual garages. Between plaintiffs' home and the playground are two duplex houses, one behind the other. We have now referred to all the buildings on block 17. The territory south, east and west from plaintiffs' home is residential.

Plaintiffs purchased their property in 1937 for $8000. They recently spent $3500 to $4000 on improvements. Mrs. Dawson says its value was $26,000 to $30,000 in the summer of 1948. Dr. Dawson testifies they were offered $16,000 recently, apparently after the funeral home was planned. Mrs. Dawson says their property would have very little value as a home if the funeral parlor is built. A real estate agent testifies the funeral home would decrease the value of plaintiffs' residence and others in the locality around twenty-five per cent. Dr. Dawson says he would not expect to continue to live in his home if the funeral parlor is permitted.

Plaintiffs' main objection to the funeral home is the claimed depressing effect any such place in that location would have upon the members of their family. However, there is much testimony as to heavy traffic on 12th Street and it is urged as one basis for relief that traffic would be much worse if the funeral home were permitted.

Mrs. Dawson testifies the prospect of the funeral home has made her, her husband and three children, eleven to fourteen, very unhappy and they would be depressed by it. The living room, dining room and two bedrooms are on the south side of their house where they would look out at the funeral home. Dr. Dawson, a physician and surgeon, says his main objection to the funeral home is on account of his wife, children and guests who might be sensitive about proximity of such a place.

Aside from Dr. Dawson five physicians express the opinion that people, especially children and the sick, living near a funeral home are depressed by it. One says "it is just the thought a dead body is in there." A man and wife who live across 12th Street about a half block south of defendant's corner testify the funeral home would have a very depressing effect on them. There is some other such testimony and also that the funeral home would lower the value of near-by property.

Defendant plans to erect a building of brick and stone, 70 by 80 feet, two stories and basement, soundproof, air-conditioned, estimated to cost $85,000. It would be back twenty feet from the sidewalk along 12th Street and thirty-five feet from the sidewalk along 3d Avenue, about one hundred twenty-six feet south of plaintiffs' home. Both 12th Street and 3d Avenue are seventy feet wide between sidewalks. Entrance to the funeral home would be from 12th Street. A U-shaped drive would permit vehicles to enter the grounds from 12th and leave on the same street. During a funeral the casket would be transferred to the sedan used for a hearse in an enclosure at the south side of the building—on the opposite side from plaintiffs' home. Defendant plans to landscape the grounds and to set out Norway spruce trees along the outside, except on the west, for privacy and seclusion. He intends to have a small neon sign in front of the funeral home.

Defendant testifies no embalming would be done at the new home nor would a supply of caskets be kept there. Embalming would be done at his present mortuary at 11th Street and 1st Avenue South, about two and one-half blocks from the new location. Caskets would be kept in defendant's present warehouse. Neither hearse nor ambulance would be kept in the new location. There would be attendants' sleeping quarters on the second floor of the new building and a chapel on the first floor where services may be held. However, about eighty per cent of the funerals defendant conducts are held in a Catholic church. The last three years defendant has had from one hundred fifteen to one hundred thirty funerals a year.

At the time of trial, in the spring of 1949, defendant held an option to purchase lot 4, block 16, east of the parcel he purchased in September and says he will buy lot 4 for parking space if permitted to build the funeral home. Lot 4 would give defendant a total frontage of one hundred eighty-six feet on 3d Avenue—about the same frontage plaintiffs have on that street.

At least eight witnesses for defendant say they have lived close to one or more of three funeral homes in Fort Dodge without experiencing any horror or depressed feeling because of the location and they observed no such effect upon their children or others. There is some other testimony of this nature.

One of these other funeral homes is at the northeast corner of block 12, just east of block 17 in which plaintiffs live at the southwest corner. Another is at 10th Street and 1st Avenue South, about three blocks northwest of plaintiffs' home. The largest apartment building in Fort Dodge is across the street from this mortuary. We have referred to defendant's present establishment a block east of the one last-mentioned. There are rented apartments in the building used for defendant's present mortuary.

A casket salesman who has traveled in Iowa testifies about ninety-five per cent of the funeral homes in the state are in a residential area, and names many cities and towns where this is true.

Defendant also offered evidence as to the heavy traffic in the vicinity of his present mortuary and that it would be partly relieved by use of his newly acquired property.

The above is a sufficient indication of the evidence.

We now consider ordinance 748, apparently enacted pursuant to chapter 415, Code, 1946, and the permit issued defendant by the city thereunder, claimed to be a complete defense to this action. The ordinance establishes a restricted residence district in the six blocks between 3d and 6th Avenues South and between 12th and 14th Streets, makes it unlawful to erect or occupy therein any building except a residence, school or church without first securing a permit, and provides no permit shall issue when sixty per cent of the resident owners in the district object. Defendant's property is in the northwest corner of this district. Plaintiffs' residence is just outside the district and block 17 is not restricted to residences. Any commercial building may be built there without violation of any ordinance.

Defendant applied to the city for a permit to build his funeral home, notice of hearing was published and hearing had at which the matter was referred to the city engineer who reported back that sixty-four resident owners in the district had signed a consent and thirty-one had signed objections to the issuance of the permit. The council then authorized its issuance.

Obtaining the permit met requirements of the ordinance and precluded an action by the city, under Code section 415.3,

for violation of the ordinance. However, plaintiffs claim no such violation. Their right to relief depends on whether defendant's establishment will be a nuisance. The permit does not afford a complete defense to this action if the funeral home will be a nuisance. The permit did not and could not authorize a nuisance. A court of equity may properly determine the question of nuisance even though the permit was issued.

These views find support in Pauly v. Montgomery, 209 Iowa 699, 705, 706, 228 N.W. 648; Payne v. Town of Wayland, 131 Iowa 659, 661, 109 N.W. 203; Hatcher v. Hitchcock, 129 Kan. 88, 281 P. 869, 872; Gunderson v. Anderson, 190 Minn. 245, 251 N.W. 515, 516; Sweet v. Campbell, 282 N. Y. 146, 25 N.E.2d 963, 964; Re Perrin, 305 Pa. 42, 156 A. 305, 79 A. L. R. 912, 915, 916; annotation 166 A. L. R. 659, 664; 39 Am. Jur., Nuisances, section 208. See also Cowin v. City of Waterloo, 237 Iowa 202, 21 N.W.2d 705, 163 A. L. R. 1327. Funnell v. City of Clear Lake, 239 Iowa 135, 30 N.W.2d 722, cited by defendant, is not in conflict with these views.

However, granting the permit pursuant to the ordinance is an expression of municipal thought and opinion which it is proper to consider on the question of nuisance although it is not conclusive. Re Perrin, supra; White v. Old York Road Country Club, 322 Pa. 147, 185 A. 316, 318.

Defendant contends action of the city as to the permit constitutes a complete defense because there was no pleaded issue as to its validity. Plaintiffs' petition alleges the area in question is residential and the funeral home would constitute a nuisance. Defendant's answer states the area is part commercial, part residential; that while a district south of 3d Avenue and east of 12th Street was restricted to residences the restrictions were waived in compliance with city ordinances. There was no reply.

Defendant is not entitled to a reversal because of the state of the pleadings or plaintiffs' failure to reply. The petition and answer raise a disputed issue as to the character of the area and the existence of a threatened nuisance. Therefore no reply was necessary. See Verlinden v. Godberson, 238 Iowa 161, 164, 25 N.W.2d 347, 349; Shalla v. Shalla, 237 Iowa 752, 764, 23 N.W.2d 814, 820.

Further, the trial proceeded as if the issues were complete. No claim was made in the trial court that plaintiffs' failure to attack the permit by pleading was fatal to their case. It is now too late for defendant to contend otherwise. See Wilson v. Corbin, 241 Iowa 593, 605, 41 N.W.2d 702, 709, and citations.

The authorities agree that undertaking is a lawful and necessary business and a funeral home is not a nuisance per se. However, it may become a nuisance from the manner in which it is conducted and, according to many authorities, because of its location. There is no fixed rule governing all cases of this kind—each must be determined upon its own facts. See Beisel v. Crosby, 104 Neb. 643, 178 N.W. 272, 273; Hatcher v. Hitchcock, supra, 129 Kan. 88, 281 P. 869, 872; Cunningham v. Miller, 178 Wis. 22, 189 N.W. 531, 534, 23 A. L. R. 739, 742; O'Malley v. Macken, 182 Minn. 294, 234 N.W. 323, 324; Jack v. Torrant, 136 Conn. 414, 71 A.2d 705, 709; annotation 87 A. L. R. 1061.

When it is sought to establish a funeral home in a purely residential district it is held by many decisions to be a nuisance. In Bevington v. Otte, 223 Iowa 509, 273 N.W. 98, we held a funeral home in a purely residential district was a nuisance. In the cited case no business was located within four or five blocks of the place. Two plaintiffs lived much nearer defendants' establishment than plaintiffs do here. The driveway where bodies were loaded and unloaded was only about nineteen feet from the Bevington residence. The Otte funeral home was not soundproof. No permit had been issued for it. As stated, issuance of a permit pursuant to ordinance is a proper matter to consider on the question of nuisance although it is not conclusive. We think Bevington v. Otte is not controlling here.

In any event, we are not now prepared to hold, as plaintiffs apparently would have us, that every funeral home, even when properly maintained and operated, is necessarily a nuisance merely because it is located in a residential district. Of course it may become a nuisance under the facts of a particular case.

There is no evidence defendant would not conduct his funeral home according to approved practices or that plaintiffs would be subjected to disagreeable odors or danger of disease. According to the testimony plaintiffs or other neighbors would

not see caskets loaded or unloaded nor hear funeral services. (We find no case of this kind in which the building sought to be enjoined was to be soundproof..)

Plaintiffs' main objection to defendant's establishment is that it would have such a depressing effect upon the members of the family as to impair the comfort and enjoyment of their home and depreciate its value. It is true many cases have upheld similar objections where it is proposed to put a funeral home in a purely residential district. In effect they hold a funeral home in a strictly residential district is a nuisance per se because of the inherent nature of the business, although conducted in an approved manner, without unpleasant odors or disease germs. See Laughlin, Wood & Co. v. Cooney, 220 Ala. 556, 126 So. 864; Leland v. Turner, 117 Kan. 294, 230 P. 1061; Kundinger v. Bagnasco, 298 Mich. 15, 298 N.W. 386, and citations; Streett v. Marshall, 316 Mo. 698, 291 S.W. 494; Jordan v. Nesmith, 132 Okla. 226, 269 P. 1096. We are not in agreement with this view.

However, we think these and similar decisions are not applicable here. The block in which plaintiffs live can hardly be called purely residential. It has been in a state of transition from residential to commercial use. A filling station and commercial garage are now located there. Block 17 is not restricted by ordinance to residences. The main business district has expanded to within a block of the intersection in question. In the block adjoining on the east is a Catholic church where many funerals are held and in the far corner is an established funeral home.

A number of courts have refused to enjoin establishment of a funeral home in a location close to the business district or in a state of transition from residences to commercial uses. White v. Luquire Funeral Home, 221 Ala. 440, 129 So. 84; Fentress v. Sicard, 181 Ark. 173, 25 S.W.2d 18; Moss v. Burke & Trotti, 198 La. 76, 3 So.2d 281; Dutt v. Fales, 250 Mich. 579, 230 N.W. 948; O'Malley v. Macken, supra, 182 Minn. 294, 234 N.W. 323; Meldahl v. Holberg, 55 N. D. 523, 214 N.W. 802; Linsler v. Booth Undertaking Co., 120 Wash. 177, 206 P. 976. See also Kirk v. Mabis, 215 Iowa 769, 246 N.W. 759, 87 A. L. R. 1055, where we refused to enjoin a funeral home in a district

zoned for commercial purposes although residences were apparently close by.

The statutory definition of nuisance in Minnesota and in North Dakota is almost identical with our section 657.1, Codes, 1946, 1950.

■ The mere fact the location of the funeral home would depreciate the value of plaintiffs' property for residence purposes does not entitle them to relief. O'Malley v. Macken, supra, 182 Minn. 294, 234 N.W. 323; 39 Am. Jur., Nuisances, section 28; 46 C.J., Nuisances, section 56. Location near them of any one of numerous lawful businesses might depreciate the value of their property. Any increase in automobile traffic which would result from operation of the new home is clearly insufficient basis for injunctive relief.

■ As stated, undertaking is a lawful and necessary business. There must be some place where a funeral home may properly be located in a city. For various reasons the heart of the business district is hardly an appropriate place. It should not be necessary for friends to go to the outskirts of the city to pay their respects to one deceased. It would seem, in the absence of municipal restrictions, a carefully conducted funeral home may properly be located near the edge of an area that is being invaded by business, where defendant seeks to establish this one. It is to be inferred from the evidence, indeed it is a matter of common knowledge, that numerous funeral homes in various cities and towns of this state are located in comparable places.

■ Injunctions are granted sparingly, with caution and only in clear cases. A threatened nuisance will be enjoined only where it clearly appears a nuisance will necessarily result from the thing it is sought to enjoin. Amdor v. Cooney, 241 Iowa 777, 784, 43 N.W.2d 136, 141, and citations. See also Dutt v. Fales, supra, 250 Mich. 579, 230 N.W. 948, 949; White v. Old York Road Country Club, supra, 322 Pa. 147, 185 A. 316, 318. After careful consideration we feel this is not such a case.— Reversed.

BLISS, OLIVER, SMITH, MANTZ, and HAYS, JJ., concur.

WENNERSTRUM and HALE, JJ., dissent.

MULRONEY, J., takes no part.

WENNERSTRUM, J. (dissenting)—I respectfully dissent from the majority opinion. However, I desire to express my disapproval of it.

I. The case of Bevington v. Otte, 223 Iowa 509, 518, 273 N.W. 98, 102, should be, and in my opinion is, controlling in the case here reviewed. But the majority opinion states it is not. I believe it should not be distinguished.

. , The Bevington v. Otte case was decided by this court in 1937 and has not been questioned since that time. It was therein stated:

"* * * we see no justification whatever for the defendants' attempt to intrude a commercial enterprise into this purely residential neighborhood and subject its residents not only to a loss in the value of their respective properties, but also to the annoyances to the peace and enjoyment of their homes, and possible detriment to their health, which. must result if the defendants succeed in what they are attempting to do."

However, this court inferentially overrules this last referred to case. It should do so positively for its holding amounts to a change of attitude on the part of this court. The majority opinion states that the distinction between the Bevington case and the present one is that in the former case the proposed funeral home was in a definite residence district while in the instant case the proposed funeral home site, even though in a residential district, is near an area changing in part from residential to commercial. The facts commented upon and emphasized are that plaintiffs' residence property is in a commercially zoned district. It does not give consideration to the fact that the proposed site is in a residential district. The majority opinion seems to find some solace and justification in the fact that the proposed funeral home is to be soundproofed. If the business to be carried on in the proposed building is not in its very nature a nuisance in the selected location why would it need to be made soundproof at all and that fact commented on in the majority opinion? However, it cannot be denied that the site of the proposed funeral

home is in a definite residential district. In fact the majority opinion cites with approval many cases which hold that a funeral home in a strictly residential district is a nuisance because of the very nature of the business. It even states and cites authorities for the following statement: "When it is sought to establish a funeral home in a purely residential district it is held by many decisions to be a nuisance." This statement would give support to an affirming opinion.

It is to be presumed that the writer of the opinion in the Bevington v. Otte case, Donegan, J., gave careful consideration to its preparation. It is also to be presumed that the members of this court who joined in it were satisfied that it expressed what they thought was good law. The three members of the court who did not join in the opinion did not file or indicate a dissent. Yet the majority of the present court see fit to file what amounts to an overruling opinion. The statement made by Mr. Justice Roberts in his dissenting opinion in Smith v. Allwright, 321 U. S. 649, 666, 670, 64 S. Ct. 757, 766, 768, 88 L. Ed. 987, 151 A. L. R. 1110, can be advisedly quoted here:

"This tendency, it seems to me, indicates an intolerance for what those who have composed this court in the past have conscientiously and deliberately concluded, and involves an assumption that knowledge and wisdom reside in us which was denied to our predecessors. * * *

"It is regrettable that in an era marked by doubt and confusion, an era whose greatest need is steadfastness of thought and purpose, this court, which has been looked to as exhibiting consistency in adjudication, and a steadiness which would hold the balance even in the face of temporary ebbs and flows of opinion, should now itself become the breeder of fresh doubt and confusion in the public mind as to the stability of our institutions."

II. The citation of Iowa opinions by courts of other states gives an indication of their approval of the holdings of our court. It gives a merited recognition. The Bevington v. Otte case has been recognized as one of the leading cases on the subject matter here discussed. In the case of Brown v. Arbuckle, 1948, 88 Cal. App. 2d 258, 261, 198 P. 2d 550, 551, it

is stated: "While some courts hold that an undertaking parlor or funeral home in a residential district is not a nuisance, the more recent trend of authority is clearly to the contrary. Bevington v. Otte, 1937, 223 Iowa 509, 273 N.W. 98." This Iowa case is also cited with approval in Williams v. Montgomery, 1939, 184 Miss. 547, 549, 556, 186 So. 302, 304. If our opinions are to be cited by courts of other states it will be by reason of the belief that they will, with consistency, adhere to a previous well-thought-out holding. They should be considered as established precedents.

III. The majority opinion cites several cases that support the holding that the granting of a permit does not authorize the establishment of a nuisance. Two Pennsylvania cases are cited which hold that the issuance of a permit is a proper matter to consider but is not conclusive. This statement is made in the face of a previous comment in the opinion that "the permit did not and could not authorize a nuisance. A court of equity may properly determine the question of nuisance even though the permit was issued." It would appear that there is an apparent variance in these two statements in the majority opinion. A further holding not cited by the majority to the effect that the erection and presence of a funeral home in a residential district could and should be enjoined even though a permit has been granted is found in Jones v. Chapel Hill, 273 App. Div. 510, 77 N. Y. S.2d 867, 870.

IV. It is not denied in the majority opinion that a funeral home in a strictly residential district is a nuisance because of the inherent nature of the business and although conducted in an approved manner without unpleasant odors or disease germs. Cases are cited in that opinion in support of such a statement. This holding is substantiated by innumerable authorities. In the annotations found in 87 A. L. R. 1062 it is stated in the text as follows:

"The greater weight of recent authority is to the effect that the establishment and operation of an undertaking business in a purely residential section, under circumstances which would cause a depressed feeling to the families in the immediate neighborhood, and a constant reminder of death, appreciably impair-

ing their happiness, or weakening their power to resist disease, and depreciating the value of their property, constitutes a nuisance."

In 54 Am. Jur., Undertakers and Embalmers, section 7, pages 512, 513, a statement to the same effect is made.

It is also stated in 3 Cooley on Torts (1932), Fourth Ed., section 435, page 180, as follows:

"By what appears to be the weight of modern authority, however, it is held that the location of such a business in a residential district is sufficiently objectionable to make it a nuisance. Thus it has been stated: The inherent nature of an undertaking establishment 'is such that, if located in a residential district, it will inevitably create an atmosphere detrimental to the use and enjoyment of residence property, produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the absence of a strong showing of public necessity, its location in such a district should not be permitted over the protests of those who would be materially injured thereby.' "

My research, as well as that of others, shows that the appellate courts in the majority of the states which have passed on the question have opinions wherein the facts and the law therein announced justify the statements previously quoted. They are: Alabama, Arkansas, Connecticut, Georgia, Indiana, Kansas, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New York, North Dakota, Oklahoma, South Carolina, Texas, Virginia, Washington, and Wisconsin.

The cases which support this reasoning by states are:

Higgins v. Bloch, 1925, 213 Ala. 209, 104 So. 429 (funeral home within residential district); Higgins & Courtney v. Bloch, 1930, 216 Ala. 153, 112 So. 739 (where even with encroachment of business court held injunction should issue); Laughlin, Wood & Co. v. Cooney, 1930, 220 Ala. 556, 126 So. 864; White v. Luquire Funeral Home, 1930, 221 Ala. 440, 129 So. 84 (injunction denied where there were other commercial enterprises within block or fronting on same street); Fentress v. Sicard, 1930, 181 Ark. 173, 25 S.W.2d 18; Brown v. Arbuckle, 1948, 88 Cal.

App. 2d 258, 198 P.2d 550 (injunction granted where proposed funeral home would be in residence district; also held case of Dean v. Powell Undertaking Co., 1921, 55 Cal. App. 545, 203 P. 1015, not controlling as it was decided on pleadings and facts not applicable) ; Jack v. Torrant, 1950, 136 Conn. 414, 71 A.2d 705; McGowan v. May, 1938, 186 Ga. 79, 196 S.E. 705 (holding under Georgia practice that proposed undertaking business in residential district should be temporarily enjoined until case could be heard by jury, following Harris v. Sutton, 1929, 168 Ga. 565, 148 S.E. 403) ; Albright v. Crim, 1933, 97 Ind. App. 388, 185 N.E. 304 (funeral home in residential section enjoined) ; Reiser v. Osborn, 1944, 114 Ind. App. 617, 53 N.E.2d 545 (funeral·home in residential district enjoined even though four hundred feet from plaintiff's residence and view partially obstructed) ; Leland v. Turner, 1924, 117 Kan. 294, 230 P. 1061; Hatcher v. Hitchcock, 1929, 129 Kan. 88, 281 P. 869; Weinmann v. Miles, 1931, 134 Kan. 107, 4 P.2d 437; Fink v. Smith, 1934, 140 Kan. 345, 36 P.2d 976; Osborn v. City of Shreveport, 1918, 143 La. 932, 79 So. 542, 3 A. L. R. 955, but see Moss v. Burke & Trotti, Inc., 1941, 198 La. 76, 3 So.2d 281; Lewis v. Baltimore, 1933, 164 Md. 146, 164 A. 220; Saier v. Joy, 1917, 198 Mich. 295, 164 N.W. 507, L. R. A. 1918A 825; Dillon v. Moran, 1926, 237 Mich. 130, 211 N.W. 67 (where it is shown that business outside of residential district had reached it injunction issued to enjoin establishment of funeral home) ; Kundinger v. Bagnasco, 1941, 298 Mich. 15, 298 N.W. 386; City of St. Paul v. Kessler, 1920, 146 Minn. 124, 178 N.W. 171; Meagher v. Kessler, 1920, 147 Minn. 182, 179 N.W. 732, but see O'Malley v. Macken, 1931, 182 Minn. 294, 234 N.W. 323 (where it is shown that there is a hotel within block and numerous rooming houses) ; Williams v. Montgomery, 1939, 184 Miss. 547, 186 So. 302; Davis v. Holmes, 1940, 189 Miss. 554, 198 So. 25 (where in area of eight city blocks are about seventy-five residences and two small grocery stores and small delicatessen shop, held essentially residential in character and funeral home enjoined) ; Smith v. Fairchild, 1942, 193 Miss. 536, 10 So.2d 172 (where it is held that location of ice plant, gas station and small grocery store within one thousand feet of undertaking establishment did not change residential character of district

and prevent issuance of injunction); Tureman v. Ketterlin, 1924, 304 Mo. 221, 263 S.W. 202, 43 A. L. R. 1155 (funeral home enjoined even though district was in state of transition where shown essentially residential); Streett v. Marshall, 1927, 316 Mo. 698, 291 S.W. 494 (where, as shown in the instant case, embalming would be done at another place of business and bodies brought to funeral home and it would constitute a mortuary chapel, held that such home in a residential district where reminder of death affected plaintiffs it should be enjoined); Clutter v. Blankenship, 1940, 346 Mo. 961, 144 S.W.2d 119; Beisel v. Crosby, 1920, 104 Neb. 643, 178 N.W. 272 (where although it is shown garage is within one and one-half blocks, two blocks of filling station and three blocks of a grocery, yet district essentially residential and use of property for funeral home enjoined); Arthur v. Virkler, 1932, 144 Misc. 483, 258 N. Y. Supp. 886; Sweet v. Campbell, 1940, 282 N. Y. 146, 25 N.E.2d 963; Meldahl v. Holberg, 1927, 55 N. D. 523, 214 N.W. 802; Jordan v. Nesmith, 1928, 132 Okla. 226, 269 P. 1096 (where it was held that use of funeral home in a residential district should be enjoined where it materially detracts from the comfort and happiness of those who dwell near by); Fraser v. Fred Parker Funeral Home, 1942, 201 S. C. 88, 21 S.E.2d 577 (held that where operation of funeral home caused depressed feeling, impaired happiness of near neighbors in residential area it should be enjoined. Dissenting opinion filed); Blackburn v. Bishop, Tex. Civ. App., 299 S.W. 264; Bragg v. Ives, 1927, 149 Va. 482, 140 S.E. 656; Densmore v. Evergreen Camp, 1910, 61 Wash. 230, 112 P. 255, 31 L. R. A., N.S., 608, Ann. Cas. 1912B 1206 (Linsler v. Booth Undertaking Co., 1922, 120 Wash. 177, 206 P. 976, distinguishes last cited case); Goodrich v. Starrett, 1919, 108 Wash. 437, 184 P. 220; Haan v. Heath, 1931, 161 Wash. 128, 296 P. 816 (which distinguishes Rea v. Tacoma Mausoleum Assn., 1918, 103 Wash. 429, 174 P. 961, 1 A. L. R. 541); Cunningham v. Miller, 1922, 178 Wis. 22, 189 N.W. 531, 23 A. L. R. 739.

Courts of states which hold contrary to the holdings heretofore set forth are: Kentucky, New Jersey and Oregon. The cases from these states are: Pearson & Son v. Bonnie, 1925, 209 Ky. 307, 272 S.W. 375, 43 A. L. R. 1166; Westcott v.

Middleton, 1887, 43 N. J. Eq. 478, 11 A. 490; Stoddard v. Snodgrass, 1925, 117 Or. 262, 241 P. 73, 43 A. L. R. 1160.

See also O'Malley v. Macken, 1931, 182 Minn. 294, 234 N.W. 323, where it is shown that in a block in question in Rochester there is a hotel and numerous boarding houses; also Koebler v. Pennewell, 1906, 75 Ohio St. 278, 79 N.E. 471 (where statutory definition and interpretation of word "morgue" was involved); O'Connor v. Ryan, 1942, Tex. Civ. App., 159 S.W.2d 531 (where business in area is shown injunction denied); Dutt v. Fales, 1930, 250 Mich. 579, 230 N.W. 948 (injunction denied where funeral home was in semi-industrial and residential district).

In spite of the predominately greater number of supporting authorities which hold under evidence similar to that presented in the instant case that a funeral home in an exclusive residential district should be enjoined, the majority opinion finds it possible to hold otherwise and to inferentially overrule our case of Bevington v. Otte, supra. This dissent therefore endeavors to express my disapproval of this disregard for precedents.

The majority opinion seeks to obtain support for its holding by citing our case of Kirk v. Mabis, 215 Iowa 769, 777, 246 N.W. 759, 762, 87 A. L. R. 1055. The majority opinion fails to state that the cited case was decided as it was because the funeral home was in a commercially zoned district. The concluding sentence of that opinion is: "The property upon which he is operating his business being designated as a commercial district, it is a proper and fit place for a funeral home, and the judgment and decree of the lower court was proper, and it is hereby—Affirmed." In the present case the proposed funeral home is not in a commercial district but in a residential district.

V. The evidence in the instant case discloses that the presence of the funeral home at the contemplated site would have a detrimental effect on the mental state of the neighbors. This conclusion is confirmed by substantiating testimony. The rule is that the determining factor must be whether or not the presence of a funeral home in a residential section would so affect a normal and ordinary person. Smith v. Fairchild, 193 Miss. 536, 10 So.2d 172–174; Jack v. Torrant, 136 Conn. 414, 71 A.2d 705, 710; Jones v. Chapel Hill, Inc., 273 App. Div. 510,

77 N. Y. S.2d 867; Albright v. Crim, 97 Ind. App. 388, 185 N.E. 304. This has been adequately shown.

VI. The majority opinion, in its closing paragraph, comments on the fact that injunctions should be granted sparingly and only where it appears a nuisance will necessarily result from the thing sought to be enjoined. The evidence, in my opinion, definitely shows a nuisance will result. The majority opinion even admits that a funeral home is generally considered a nuisance in a residential district. I think the statement made in 39 Am. Jur., Nuisances, section 152, page 420, can be appropriately quoted in refuting the statements made in the majority opinion just referred to. It is as follows:

"And if it is shown that there is a reasonable and just ground to apprehend the establishment of a nuisance threatened by the defendant, which he has power to commit, and it is reasonably certain that the health and comfort of those complaining will be disturbed by the threatened act, the writ will issue."

I would affirm the trial court and thus give support to our previously expressed holding. Thus we would give evidence of the stability of our opinions.