HELMA GUNDERSON AND OTHERS v. CARL V. ANDERSON.[1]

December 8, 1933.

No. 29,517.

[1]Reported in 251 N. W. 515.

*Leach & Swore* and *Kyle & Kyle,* for appellant.
*Constant Larson* and *Roger L. Dell,* for respondents.

*LORING, Justice.*

This was a suit by seven of the property owners in the residential part of the city of Alexandria to restrain the defendant from maintaining and operating a funeral home in the vicinity of their residences. The trial court found in favor of the plaintiffs. The defendant moved for judgment notwithstanding the findings or for a new trial and has appealed from the order denying that motion.

The order denying the motion for judgment notwithstanding the findings and decision is not appealable, and we review only the motion for a new trial.

The defendant for many years prior to the commencement of this action had been engaged in the furniture and undertaking business in Alexandria with his place of business located at Broadway and Fourth avenue in that city. For certain business reasons he thought it advisable to separate his undertaking business from his furniture business and locate the undertaking business away from the principal business street of the city, which is Broadway. He acquired lots 5 and 6 of block 28 of the original townsite of Alexandria, which is about three blocks and a half west of Broadway. He remodeled the dwelling house which was upon these lots in order to make it suitable for his funeral home and undertaking establishment and commenced the operation thereof about the first of June, 1929. It is claimed by some of the plaintiffs that they warned him prior to the purchase and improvement of the premises that they would contest his right to establish and operate a funeral home upon these lots. However that may be, he sought and obtained from the city council a permit to operate the funeral home. This action was commenced about the 20th of January, 1930, and resulted in findings that the home was established in a residential district and that it was a nuisance.

L. 1929, c. 176, Mason Minn. St. 1931 Supp. §§ 1933-42 to 1933-45, approved April 12 of that year, authorized cities of the second, third, and fourth class to adopt zoning ordinances if so authorized at an election held for that purpose. Such an election was held in the city of Alexandria, and pursuant thereto the city council adopted a zoning ordinance May 18, 1931. It was approved by the defendant as mayor on the 25th of that month. This ordinance provided for residential districts, commercial districts, restricted commercial districts, and industrial districts. The defendant's funeral home was placed in a restricted commercial district by the terms of the ordinance, which classed such homes as permissible in such districts. In order to so place this home it was necessary to extend

this restricted commercial district in a sort of corridor running westerly from Broadway for a distance of five blocks and including therein the high school, which is one block west of Broadway, the courthouse and appurtenant jail, which are two blocks west, a residence on lots 11 and 12 of block 28 where boarders were sometimes taken, the defendant's funeral home, and to the west thereof a hospital which had originally been a private dwelling but had been enlarged by its proprietor, a doctor, for the purposes of his profession, and which is now classed as a public hospital. South of the courthouse there were two lots included in the restricted commercial district or corridor above mentioned.

The first street west of Broadway is Filmore street, and substantially all of the property west thereof, including that of these plaintiffs, is classified by the ordinance as residential property, with the exception, of course, of the restricted commercial district above described. Remote from this but in the western part of the city are some blocks classified as restricted commercial and industrial territory. Plaintiffs' residences are from 65 to 230 feet from defendant's property. After the passage of this ordinance this case was reopened and resubmitted to the court, which found that in so far as the ordinance related to and permitted the defendant's funeral home at the described location it was arbitrary and unreasonable and consequently void. The court again found that the home was established in a district which was in fact residential in character and that it constituted a nuisance as to the plaintiffs and enjoined the defendant from operating the home.

The defendant earnestly contends that the zoning ordinance is valid, that it is at least debatable whether or not the defendant's property was properly classified thereby, and that the legislative discretion of the city council is therefore not to be overturned by the courts. He also contends that the defendant's funeral home is not in fact a nuisance. Counsel for both sides have been diligent in examining and briefing the authorities involving funeral homes and undertaking establishments and as far as we have been able to observe have overlooked no case in the United States relating to the propositions for which they contend.

■ The justification for a zoning ordinance lies in the police power exerted in the public interest, and the legislature may not unreasonably and arbitrarily restrict the use of private property. Washington ex rel. Seattle T. T. Co. v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. ed. 210, 86 A. L. R. 654; Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A. L. R. 1016. In our opinion it is obvious that it may not permit a use which unreasonably and arbitrarily infringes the rights of others, as by the creation of a nuisance. Appeal of Perrin, 305 Pa. 42, 156 A. 305, 79 A. L. R. 912. It "must not invade the fundamental liberties of the citizen." State ex rel. Larson v. City of Minneapolis, 190 Minn. 138, 251 N. W. 121.

■ It is the position of the defendant that if the reasonableness of the ordinance is debatable the courts may not interfere with a discretion which is primarily the legislature's. He cites Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A. L. R. 1016; State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012, and other cases. We find no difficulty with that rule; but if the facts are in dispute or if different inferences may be drawn from undisputed facts we hold that the court is free to determine those facts as in other cases. If, then, upon the facts so found the question of reasonableness is debatable, we have a case for the application of the rule contended for. But if as in the case at bar the court finds that the ordinance permits a nuisance as respects the plaintiffs, the facts are against the defendant, and there is no room for debate. As a matter of law the ordinance is unreasonable, arbitrary, and beyond the proper legislative exercise of the police power. City of St. Paul v. Kessler, 146 Minn. 124, 178 N. W. 171. It violates the due process and equal protection clauses of the constitution. In the case of Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 387, 47 S. Ct. 114, 118, 71 L. ed. 303, 54 A. L. R. 1016, the Supreme Court says:

"The ordinance now under review and all similar laws and regulations must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field sepa-

rates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities. In solving doubts, the maxim *'sic utere tuo ut alienum non laedas,'* which lies at the foundation of so much of the common law of nuisances, ordinarily will furnish a fairly helpful clew. And the law of nuisances, likewise, may be consulted, not for the purpose of controlling, but for the helpful aid of its analogies in the process of ascertaining the scope of, the power. Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. Sturges v. Bridgman, L. R. 11 Ch. Div. 852, 865-C. A nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. Radice v. New York, 264 U. S. 292, 294, 68 L. ed. 690, 694, 44 Sup. Ct. Rep. 325."

■ The defendant contends that the finding of nuisance is not sustained, but we find it amply sustained by facts found and by the evidence. Not only does the court find that defendant's funeral home depreciates the value of plaintiffs' residence property but that it interferes with the free use and comfortable enjoyment of their homes. Indeed the presence in a residential district of such a home with its constant reminder of death, its frequent funerals with their grief-stricken mourners and woeful trappings, is held by most courts to be a nuisance. City of St. Paul v. Kessler, 146 Minn. 124, 178 N. W. 171. Such a home may not be a nuisance in proper surroundings; it is not a nuisance *per se* wherever it may be. A nuisance may be a perfectly legitimate and proper business in the wrong place. As said in the Euclid case, 272 U. S. 365, 388, 47

S. Ct. 114, 118, 71 L. ed. 303, 54 A. L. R. 1016, it may be "like a pig in the parlor instead of the barnyard." Such nuisances are usually classified as nuisances *per accidens* or nuisances in fact. Their tortious existence is a question of fact. In the case at bar there are appropriate findings adequately supported.

This was one of the best residential districts in the city of Alexandria and so considered by the city assessors for the purposes of taxation. That there were buildings of the character of the high school, courthouse, and hospital in its vicinity does not in any measure detract from the exclusive residential character of the district. In cities of the size of Alexandria the improvement of a city block by a courthouse, even when there is a jail appurtenant thereto, increases the desirability of the adjacent property almost as much as would a park. Nor do we consider that the presence of a high school or other ordinary schoolhouse affects the residential character of the adjacent property. In this respect we find ourselves in complete accord with that part of the city ordinance which permits public buildings of this character in the residential district of Alexandria. It is significant to us that the city council of that city in the extension of the so-called restricted commercial district to the defendant's property included the high school and courthouse which by the very terms of the ordinance are classified as properly present in residential districts. Nor do we think that the presence of the hospital in the residence to the west of the defendant's property, improved and operated as it is, detracts from or impairs the residential quality of the district. San Diego T. Assn. v. East San Diego, 186 Cal. 252, 200 P. 393, 17 A. L. R. 513. The ordinance therefore amounted to selecting the defendant's property at a point two blocks and one-half from other commercial property and in the midst of the best residential district of Alexandria and there permitting the use of such property as a nuisance to the surrounding residents. It was not only unreasonable and arbitrary but an unjust discrimination as against such residents. A distance of two blocks in cities of the character of Alexandria, where business and industry are by necessity confined within narrow limits, may well mean a transition from a business district to a strictly

residential section of the most desirable class. In our opinion the unreasonableness of the ordinance as applied to the defendant's property is not debatable. The legislative attempt at the exercise of the police power cannot be sustained.

Defendant relies largely upon Stoddard v. Snodgrass, 117 Or. 262, 241 P. 73, 43 A. L. R. 1160; White v. Luguire Funeral Home, 221 Ala. 440, 129 So. 84; Linsler v. Booth Undertaking Co. 120 Wash. 177, 206 P. 976; and Kirk v. Mabis, 215 Iowa, 769, 246 N. W. 759. In the Stoddard case the undertaking establishment was not shown to be a nuisance. In the White case the funeral home was evidently in a district which was in a state of transition from residential to commercial uses, as in the case of O'Malley v. Macken, 182 Minn. 294, 234 N. W. 323. In the Linsler case the ordinance was not claimed to be unreasonable, nor was it apparently attacked as such in the Kirk case.

That the operation of a funeral home in a strictly residential district is a nuisance and restrainable as such is well established by the authorities in this state as well as elsewhere. Meagher v. Kessler, 147 Minn. 182, 179 N. W. 732; City of St. Paul v. Kessler, 146 Minn. 124, 178 N. W. 171; State v. Amor & Co. 153 Minn. 244, 190 N. W. 59; Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A, 825; Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272; Cunningham v. Miller, 178 Wis. 22, 189 N. W. 531, 23 A. L. R. 739.

4. There is also a contention by the defendant that plaintiff Helma Gunderson is estopped from complaining of defendant's business by the fact that she endeavored to sell or exchange her own home for the very purpose for which defendant now operates his property; but there is a finding well supported by the evidence that she did not know, realize, or comprehend the full or true nature of the work done or performed in a funeral home and that the defendant was not induced by her to purchase his property or to establish a funeral home therein. We think that the court's finding that Mrs. Gunderson is not estopped from maintaining this suit is well supported.

Affirmed.