CITY OF PLEASANT RIDGE v. COOPER.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES.
   The validity of the fundamental theory and philosophy of zoning does not grant indorsement of every instance of zoning.

2. SAME—TEST OF VALIDITY OF ZONING ORDINANCES.
   Zoning regulations, to be valid, must be made in accordance with plan to lessen traffic congestion, to promote public health, safety and welfare and with reasonable consideration to character of the district, its peculiar suitability for particular uses, conservation of property values and general trend and character of building and population development (1 Comp. Laws 1929, § 2633).

3. SAME—BUILDING RESTRICTIONS—VOID ZONING ORDINANCE.
   Zoning ordinance restricting use of lot to residence purposes *held*, unreasonable and confiscatory where lot was on boundary of village, on corner of two busy thoroughfares with opposite sides devoted strictly to commercial purposes and nearby zoo attracts large crowds on Sundays and holidays making place less desirable for high-class residential purposes.

4. APPEAL AND ERROR—BUILDING RESTRICTIONS—ZONING ORDINANCES —COVENANTS.
   Building restrictions imposed by covenants in deed are not considered on appeal from injunction granted city to enforce its zoning ordinance on particular lot although decree is reversed.

Appeal from Oakland; Covert (Frank L.), J. Submitted April 6, 1934. (Docket No. 61, Calendar No. 37,467.) Decided June 4, 1934.

Bill by City of Pleasant Ridge, a municipal corporation, against Magdalene Prophet Cooper and others to enjoin violation of a zoning ordinance. Decree for plaintiff. Defendant Cooper appeals. Reversed.

*Arthur E. Moore,* for plaintiff.

*Joseph T. Schiappacasse (William R. Grover* and *Preston Allen,* of counsel), for defendant Cooper.

Bushnell, J. The defendant is the owner of property located on the southwest corner of Woodward avenue and the Ten Mile road in the city of Pleasant Ridge. It has a frontage of 312 feet on the Ten Mile road and 125 feet on Woodward avenue. A covenant forbids its use for other than residential purposes until 1935. The city of Pleasant Ridge is in Oakland county, its northerly boundary meeting the southerly boundary of the city of Royal Oak at the Ten Mile road. Its southerly boundary, five and one-half blocks in the opposite direction, adjoins the city of Ferndale. The east and west boundaries are a few blocks distant on either side of Woodward avenue, which runs in a northwesterly direction from the center of the city of Detroit to the center of the city of Pontiac. Its width in the city of Pleasant Ridge is about 200 feet, and there are separate lanes for north- and south-bound traffic. The Ten Mile road has a single paved traffic lane 26 feet wide.

Ridge road lies 712 feet west of Woodward avenue and intersects the Ten Mile road at a right angle.

At the northwest corner of these two streets is the entrance to the Detroit Zoological Park, which was opened to the public in 1928.  This park is visited by the public in large numbers ranging, according to the estimates of witnesses, from 100,000 to 200,000 on Sundays and holidays during the summer, and on other days by lesser crowds.  The north side of the Ten Mile road is occupied and used exclusively for business purposes, as are the other three corners opposite defendant's property.

In 1926, the then village of Pleasant Ridge adopted a zoning ordinance which was reenacted when it became a city in 1932.  The ordinance divided the city into five zones, A to E inclusive, of which class A is residential and class D commercial.  Included in class D are the entire east side of Woodward avenue, the west side from the southerly limits of the city to the middle of the third block to the north, and two parcels at the northwest corner of the city. Defendant's property is in class A.

The trial court upheld the validity of the ordinance, and decreed the use and occupation of defendant's property for any purpose other than a single family dwelling a nuisance *per se,* and an injunction was issued restraining the defendant from so using the premises.  The parties agreed on the record that the property restrictions in the deed would not be considered.  They also stipulated as to a number of other questions of fact.

The appeal presents the sole question as to whether the ordinance, as it affects the use of appellant's property, is a constitutional, reasonable and nonconfiscatory exercise of police power under the provisions of the zoning statute.  Our consideration of the ordinance in question is limited solely to its validity as applied to the particular property involved on this appeal.  Zoning ordinances have been

upheld by us in principle. *Dawley* v. *Ingham Circuit Judge,* 242 Mich. 247; *City of Lansing* v. *Dawley,* 247 Mich. 394; *City of North Muskegon* v. *Miller,* 249 Mich. 52; *James S. Holden Co.* v. *Connor,* 257 Mich. 580. The validity of the fundamental theory and philosophy of zoning, however, does not grant a blanket indorsement of every instance of zoning. *Nectow* v. *City of Cambridge,* 277 U. S. 183 (48 Sup. Ct. 447). The statute, 1 Comp. Laws 1929, § 2633, outlines the tests to be applied to the ordinance. It reads:

"Such regulations shall be made in accordance with a plan designed to lessen congestion on the public streets, to promote public health, safety and general welfare, and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development."

These standards have been applied in the zoning cases appealed to our court. Speaking through Mr. Justice BUTZEL in *City of North Muskegon* v. *Miller, supra,* we said:

"It is, however, necessary that a zoning ordinance be reasonable, and the reasonableness becomes the test of its legality."

We there held, on a showing that the property involved was unfit for the use to which it was restricted, that the ordinance was unreasonable and confiscatory and, therefore, illegal.

Where the village of Grosse Pointe had by a like ordinance imposed a setback on certain corner lots, while exempting others in the district, Mr. Justice FEAD, writing for the majority in *James S. Holden Co.* v. *Connor, supra,* held the exemption to be arbi-

trary, discriminatory and not based upon the general welfare. Mr. Justice CLARK in the minority opinion agreed that the classification must be uniform.

Appellant cites two recent cases from other jurisdictions which appear to be as nearly "on all fours" with the instant case as any we have examined. In *Forbes* v. *Hubbard,* 348 Ill. 166 (180 N. E. 767), the validity of the zoning ordinance of the village of River Forest was attacked, insofar as it applied to property located on the southwest corner of Harlem avenue and Chicago avenue. The ordinance restricted it to use for a single-family residence. This residential suburb, located about 10 miles west of the loop district in Chicago and including a population of 9,000, is separated from the metropolis by the village of Oak Park. Harlem avenue extends north and south along the boundary line between River Forest and Oak Park, and is a principal highway of Cook county for many miles. Chicago avenue extends westerly from the city of Chicago and is also a through highway. The other three corners at the intersection where plaintiff was located were used for commercial purposes and the east side of Harlem avenue was occupied by low-grade residences. Holding that "each case is to be determined on its own facts and surrounding circumstances," the Illinois court granted a writ of mandamus compelling the issuance of a permit to erect a store building, on the basis that the ordinance was an unreasonable invasion of plaintiff's property rights.

In *Dowsey* v. *Village of Kensington,* 257 N. Y. 221 (177 N. E. 427, 86 A. L. R. 642), it appears that the village of Kensington was coterminous with a plot of land originally developed as a single residential area. The streets were laid out in a manner

calculated to secure an atmosphere of dignified, quiet retirement, and the lots were sold subject to drastic restrictions. The village had a frontage of about one-fifth of a mile on the east side of Middle Neck road, the busiest thoroughfare in the district, a large portion of this frontage being owned by plaintiff. The ordinance included the entire village, except a small plot at some distance from plaintiff's property, and restricted it to residential uses. On the westerly side of Middle Neck road were business blocks and apartment buildings. The court said:

"Certainly an ordinance is unreasonable which restricts property upon the boundary of the village to a use for which the property is not adapted, and thereby destroys the greater part of its value in order that the beauty of the village as a whole may be enhanced. In such case the owner of the property cannot be required to ask as a special privilege for a variation of the restriction. The restriction itself constitutes an invasion of his property rights."

The testimony as to the locality in question in the instant case suggests that the maintenance of the restrictions imposed by the ordinance may possibly result in the gradual and general deterioration of the neighborhood, in that it is extremely doubtful that the high character of a residential district can be maintained in the face of the unusually heavy traffic on the Ten Mile road and Woodward avenue, the latter a superhighway, the commercial use of the properties to the north and east, and the presence of large crowds on busy days at the Detroit Zoo.

Tested by the statute and our decisions in *City of North Muskegon* v. *Miller, supra, James S. Holden Co.* v. *Connor, supra,* and the authorities cited, the ordinance as applied to defendant's property is unreasonable and confiscatory and therefore illegal.

We do not pass upon the restrictions imposed upon the property by the covenants in the deed. *Phillips* v. *Lawler,* 259 Mich. 567.

The decree is reversed and the injunction dissolved, with costs to appellants.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.