KATHERINE ELIZABETH PEARCE AND ANOTHER
v. VILLAGE OF EDINA.

118 N. W. (2d) 659.

October 5, 1962—No. 38,464.

554

*Dorsey, Owen, Barber, Marquart & Windhorst, Maynard B. Hassel-quist,* and *Edward J. Schwartzbauer,* for appellant.

*Brill & Brill,* for respondents.

*Orville C. Peterson* and *David J. Kennedy,* for League of Minnesota Municipalities, amicus curiae.

*Keith M. Stidd,* City Attorney, and *D. J. Shama,* Assistant City Attorney, for City of Minneapolis, amicus curiae.

THOMAS GALLAGHER, JUSTICE.

Plaintiffs, Katherine Pearce and Marie Pearce, sisters, bring this action against defendant, village of Edina, for a declaratory judgment invalidating certain zoning ordinances of defendant under which their real property in the village has been zoned for *office building purposes* with building restrictions which limit the use of such property in many respects and which deny them the right to construct thereon a shopping center or community stores similar to those in the adjacent area. They contend that the ordinances are discriminatory, arbitrary, and confiscatory; that they destroy valuable interests in their property without due process or without just compensation therefor; and that they deny to them uses thereof which other ordinances authorize for similar adjacent property. The trial court ordered judgments in plaintiffs' favor on all issues. Defendant appeals from these judgments as hereinafter outlined.

Plaintiffs' property is comprised of two parcels. The smaller parcel, referred to herein as the triangular parcel, is a tract bounded on the south by the north line of 66th Street and on the north and west by the northwest line of York Avenue as it extends northeasterly from 66th Street into Xerxes Avenue. Its east line is approximately 200 feet west of and parallel to the west line of Xerxes Avenue. The larger parcel, referred to herein as the upper parcel, is rectangular in outline. It has a southerly frontage of 200 feet on the north line of 66th Street. It extends northerly from 66th Street at a width of 200 feet and more for a distance of 400 feet. Its east line is 200 feet west of and parallel to the west line of Xerxes Avenue. Xerxes Avenue separates the village of Edina to the west from the village of Richfield to the east.

In this area 66th Street is a main artery of traffic to Southdale Shopping Center. The latter is bounded on the north by the south

line of 66th Street, a portion of it lying directly opposite and across 66th Street from plaintiffs' upper parcel. Its east boundary is the west line of York Avenue. The tract between Xerxes Avenue and York Avenue has been zoned for regional shopping by Edina for a distance of four blocks to the south of 66th Street.

On the southeast corner of the intersection of 66th Street and Xerxes Avenue in Richfield and diagonally across from plaintiffs' property a large tract has been zoned by Richfield for *commercial uses*. It is presently occupied by a structure used for an automobile accessory market. Directly opposite it to the west in Edina on the southwest corner of this intersection a large drive-in restaurant has been constructed across 66th Street from plaintiffs' property. To the north of 66th Street and on the east side of Xerxes Avenue in Richfield a large tract is likewise zoned for commercial uses. This tract is now occupied by a service station, a large shopping center, a supermarket, and other commercial structures extending 400 feet north and opposite plaintiffs' two parcels to the west of Xerxes Avenue.

On the northeast corner of 66th Street and France Avenue South, Edina has zoned a large tract for *regional medical uses*. On the northeast corner of the intersection there has been constructed a six-story medical building with a large parking area adjacent thereto. On the first floor of this structure there are a number of enterprises, including a large restaurant, a pharmacy, and a photography salon. East of this medical center and north of 66th Street are two small tracts upon which houses were constructed some years ago. They lie between plaintiffs' upper parcel and the medical center described. Their owners have not participated in these proceedings, and it appears that their property would be more valuable were it zoned for regional shopping or community store purposes in accordance with the plaintiffs' objectives.

Farther to the west, fronting on France Avenue and north of 66th Street, several large tracts have been zoned by Edina for *regional shopping uses*. Presently, several commercial buildings or office buildings have been constructed thereon. To the south of 66th Street and adjacent to the west line of France Avenue, opposite Southdale Shopping Center, a large tract of land has been zoned by Edina for *regional*

*shopping uses.* Up to the present no structures have been erected thereon.

It is apparent from the foregoing that in the immediate vicinity of plaintiffs' property at the intersection of 66th Street and Xerxes Avenue regional shopping areas and commercial uses have been authorized under the zoning ordinances of Edina and Richfield for all but plaintiffs' property, which in fact is surrounded by a typical regional or community shopping area.

Edina is southwest of Minneapolis. In 1935 it enacted a zoning ordinance which created and established various use districts. Under this ordinance and subsequent amendments thereto, the following classifications are included among others:

1. *Multiple residence district.* (Plaintiffs' property was zoned for multiple dwelling from 1958 to early in 1961 when it was rezoned for office building uses.)

2. *Community store district.* (This permits use of property for multiple dwelling and retail establishments.)

3. *Regional shopping district.* (This permits uses authorized in its community store district but requires a low ratio of building to land.)

4. *Regional medical district.* (This authorizes construction of hospitals, medical offices, laboratories, and certain retail facilities.)

5. *Office building district.* (This authorizes the construction of business and professional offices and permits certain enumerated retail sales and service facilities, accessory to the office building. No separate stores may be erected for shopping purposes. Total floor area authorized for such accessory uses may not exceed 10 percent of the gross floor area of the building. Signs therefor on the exterior of building may not project more than one foot beyond face of the building and may not indicate more than the name and type of accessory use.)

On July 24, 1959, plaintiffs petitioned defendant village that their properties "be rezoned so as to permit the erection of improvements thereon of the kind now permitted in your community store district, your commercial district and your regional shopping district." Their petitions were denied on September 9, 1959.

This action was instituted October 22, 1959. The complaint therein alleged that plaintiffs had submitted their petitions to the village to rezone their property so as to permit the erection thereon of the kind of improvements authorized for its community store district and certain other districts as described in their petitions; that such improvements would be innocuous and completely harmless to any residents occupying property adjacent or near theirs; that such petitions had been denied by defendant and that the latter's action in so doing was arbitrary, confiscatory, discriminatory, and unconstitutional. They prayed for judgment determining that the zoning ordinance applicable to their property, which classified it for multiple-dwelling purposes, was unreasonable, confiscatory, arbitrary, and void, and that defendant be directed to adopt an ordinance in accordance with such petitions.

At the trial substantial evidence was submitted to establish the factual situation with reference to zoning and use of the premises adjacent to plaintiffs' property as above outlined. Plaintiffs also submitted testimony of experts indicative that the use of their property for community store or shopping center purposes would not create additional traffic or safety hazards; and would not detract from or be harmful to the property or structures adjacent to or surrounding plaintiffs' property. Based upon the evidence submitted, and having viewed the property, the trial court made findings on April 11, 1960, which it amended on September 28, 1960. These included the following:

"* * * plaintiffs submitted a Petition in writing * * * to rezone said property so as to permit the erection thereon of the kind of improvements then permitted in said Village in its so-called 'community store district' and certain other districts in said Petition described.

* * * * *

"That the 'community store district' established by the zoning ordinance of the Village of Edina provides for permission to erect in said district many types of improvements wholly innocuous in character and completely harmless to any of the residents of the Village of Edina

occupying property adjacent to that of the plaintiffs or otherwise, * * *.

"That the property of the plaintiffs * * * is now zoned * * * for uses which do not include but, on the contrary, exclude all of the above listed uses permitted in said 'community store district.'

"That the larger [upper parcel] of the two tracts above described is entirely suitable for use for any of the purposes above described.

"That said larger tract is worth approximately $350,000.00 if it may be used for the purposes permitted in said community store district and would be worth not more than $100,000.00 if its use is limited to those permitted under the present zoning.

"That a large map marked Exhibit A was introduced in evidence showing the uses to which the neighborhood has been put under the present zoning ordinances and that the larger tract of the plaintiffs was practically in the center of the well developed commercial district with the exception of a small row of houses to the East and two houses to the West of the plaintiffs' property and that the said row of dwellings would not be materially diminished in value by the rezoning of the plaintiffs' larger tract and the other two houses would in all probability be increased in value by the rezoning asked for.

"That the use of said larger tract for the purposes requested would not be harmful to the health, safety, morals or public welfare of the community of the Village of Edina.

"That the denial of said Petition deprives plaintiffs of their property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States, and to the equal protection clause of the Constitution of the United States, and takes plaintiffs' property without just compensation first paid or secured, contrary to Article 1, Section 13, of the State of Minnesota.

"That the zoning ordinance of the Village of Edina as applied to plaintiffs and the action of said Village Council in denying the plaintiffs' applications for rezoning are and were arbitrary, discriminatory, confiscatory and unreasonable and therefore, unconstitutional.

"The plaintiffs were compensated for consequential damages to the triangle when York Avenue South was extended through a portion

of the plaintiffs' property in 1955, and such consequential damages did not amount to a taking of the plaintiffs' property by eminent domain. The plaintiffs are still entitled to use the triangle for such purposes as they wish as regulated by valid laws and ordinances.

"That the application of said zoning ordinance restricting plaintiffs' property as aforesaid is not within the powers granted to the Village of Edina by the State of Minnesota.

"That the claim of the defendants that the rezoning of the larger tract above described for the purposes requested would create a traffic hazard to the public is not justified by the evidence and the court finds to the contrary.

"That the claim of the defendant that there was no community need for the extension of the business district in Edina to the plaintiffs' larger tract is not justified by the evidence and the court finds to the contrary.

"With respect to the claim of the defendant that the Village of Edina adopted a policy of not extending the use of property north of 66th Street opposite the Southdale shopping center for business purposes, the court finds that said policy, as adopted, has long since been abandoned.

"With respect to the triangular or smaller tract above referred to, the Court finds that the same is not suitable for any of the uses for which it is zoned. All value which remained in the triangular property subsequent to the taking of the strip for York Avenue South in 1955 is confiscated by the present zoning restrictions. The Court further finds that said tract ought not to be used for a purpose which will substantially increase automobile traffic."

In its conclusions as amended September 28, 1960, and October 24, 1960, the court determined as follows:

"That the ordinances of the Village of Edina restricting the use of the larger tract * * * to use for multiple dwelling purposes and the action of the Village Council * * * in refusing to rezone said property for the uses permitted * * * in community store districts, is unreasonable, confiscatory, arbitrary and void.

"That a reasonable use of the larger tract would be for any and

all the purposes permitted in the community store district as defined by the ordinances of the Village of Edina.

"That the application of the zoning ordinances by the village council of Edina to the property of the plaintiffs has been unreasonable, arbitrary, discriminatory, capricious, and therefore, void and unconstitutional.

"Said village council is ordered to reconsider the petition of the plaintiffs for rezoning of the[ir] property and to rezone the same in a manner which is not unreasonable, arbitrary, discriminatory or capricious, and * * * to take notice * * * that the dividing line supposedly existing on 66th Street no longer exists because of commercial encroachments, some of which were created and permitted by said village council and others beyond their control.

"With respect to the smaller tract, also referred to as the triangular tract, the defendant is hereby directed through its Village Council to revise its zoning ordinance so as to permit commercial use thereof of the kind and character which will not unduly increase the traffic surrounding the said triangle.

"Pursuant to M. S. A. 555.08, the Court retains jurisdiction of the subject matter of this lawsuit upon application by either party for any further relief."

Subsequent to the court's decision as aforesaid, defendant's council on February 13, 1961, adopted Ordinances Nos. 261-59 and 261-60. Ordinance No. 261-59 amended the prior zoning ordinance with reference to the *office building district* by creating additional restrictions and limitations as to the area and height of office buildings and as to accessory store uses previously permitted in such districts; and as authorized in *regional medical districts*. Immediately after passage of Ordinance No. 261-59, defendant adopted Ordinance No. 261-60. Thereunder plaintiffs' upper parcel was rezoned from *multiple dwelling district* to *office building district*. No change in zoning for the triangular parcel belonging to plaintiffs was made by defendant, leaving that parcel worthless under present ordinances.

Plaintiffs promptly moved the court, which had retained jurisdiction of the proceedings, for an order determining that defendant's classi-

fication of plaintiffs' upper parcel for *office building uses* and its failure to zone the triangular parcel for some practical usage was in direct violation of the court's previous decision and was otherwise void, unreasonable, confiscatory, and unconstitutional. They also prayed for an order granting them an injunction against defendant's interference with their right to use their property in accordance with such decision.

In support of such motion plaintiffs submitted an affidavit by their counsel setting forth that:

"* * * after much delay and without attempting any private negotiations with affiant * * * the defendant relying largely upon the services and advice of its planning Engineer, Mr. George Hite, received from him, under date of January 31, 1961, a brochure entitled 'Land Use Planning,' a copy of which is marked Exhibit A, attached hereto and made a part hereof. That the same was handed out publicly to * * * the Planning Commission called to consider the matter herein involved on February 2, 1961."

Exhibit A, the report of Mr. Hite, referred to in the affidavit, set forth the following:

"* * * As the proper development of the land areas adjacent to the retail center is the subject of this report, it might be well to consider for a moment the objectives which the developers of that master plan had in mind when they considered this problem.

"In their book, *'Shopping Towns, U. S. A.,'* Mr. Victor Gruen and Mr. Larry Smith, architect and real estate consultant, respectively, in the Southdale Master Plan development, when referring to the development of a plan for the areas adjacent to a major retail center, state: 'These objectives should be implicit in such a comprehensive master plan: 1) Newly created uses should be in harmony with the characteristics of their adjacent areas; 2) New uses should serve as a gradual transition between the high density activity of the shopping center and the outlying quiet residential areas; 3) All new uses should be *non-competitive* to the shopping center; 4) The plan should provide for usages complementary to the shopping center; * * *.'

"The Southdale community as it was planned and as it has developed

contains frequent expression of the developers' objectives. The land areas immediately adjacent to the retail center were all designated as either office parks, apartment areas, medical districts, recreational sites, low density retail areas or *non-competitive* retail developments. * * *

* * * * *

"The Southdale Square development at the north-east corner of Xerxes and West 66th Street, although not within the Village of Edina and, therefore, subject to its zoning control, is nevertheless an important part of the Southdale Community. This land use type was previously referred to as a *non-competitive* retail development. A description of this term seems in order.

"* * * It is not expected that within the regional retail center [Southdale] enough of these convenience goods and personal services facilities could or would be developed to satisfy the needs of even a minor part of the regional retail centers primary trade population of 350,000 persons. It is therefore necessary that there be established additional convenience goods and personal service facilities within the community. In this sense, these uses are complementary, rather than *competitive* with the regional retail center, and are referred to in this report as *non-competitive.*

"The Southdale Square development then with its emphasis on convenience goods and personal service facilities is therefore *non-competitive* with the regional retail center which emphasizes 'comparative' or 'shoppers' facilities. This distinction is important when considering the objective of developing *non-competitive* adjacent land uses.

"Another type of high density retail land use which can be labeled as *non-competitive,* although it is not of the convenience goods or personal service nature is exemplified by the Sears Store in Southdale Square. * * * It then complements rather than competes with the center. * * * the store is so located that it lends strength to the Southdale Square development * * * and its design and site placement has served to diminish any adverse effect the Southdale Square development might have had on adjoining properties.

* * * * *

564

"* * * Office development on the property would be in harmony with the land use planned and developing on adjoining property in the same block and in other areas similarly situated. If, then, office buildings meet the criteria of good land use planning, what factors exist which would indicate that the property would be attractive to persons and corporations seeking office building sites?" (Italics supplied.)

Mr. Hite's report then recommended that zoning for an *office building district* be considered by defendant for plaintiffs' property. In the affidavit submitted in support of plaintiffs' motion, counsel for the plaintiffs set forth that:

"This affiant believes that the only plausible explanation of the action of the said Village Planning Commission and Village Council is that it adopted said new zoning ordinance contrary to the letter and spirit of the Court's decision for the sole and exclusive purpose of carrying out the philosophy of the said George Hite, as set forth in said Exhibit A. In this particular respect, said Village Council believes it has an obligation to the owners of the Southdale property to protect it as far as possible, against competition."

At a meeting of the Planning Commission on February 4, 1961, Hite submitted a revised report wherein all references to the need of zoning the area in which plaintiffs' property is located on a basis which would be noncompetitive with the Southdale Shopping Center were eliminated. In this report the same recommendation with reference to zoning plaintiffs' property for *office building purposes* was included, and on February 13 was favorably acted upon by defendant. Defendant denies that the noncompetitive idea which formed a basis for Hite's first report had any basis for consideration in the adoption of these ordinances. On cross-examination, Mr. Hite disclosed that the references to *noncompetitive* zoning had been eliminated from his report after a conference between him and counsel for defendant shortly prior to the February 4, 1961, meeting.

At the hearing on this motion, in addition to the affidavit described, the parties submitted testimony of various witnesses. Upon cross-examination under the statute, Mr. Hite testified that under the new *office building district* classification adopted February 13, 1961, where ac-

cessory stores authorized for office buildings were limited to a total of 1,000 square feet, this would provide sufficient space for little "book stores" or "gift shops"; that no buildings more than three stories were authorized, although the medical building a short distance to the west on 66th Street was six stories high and contained a large pharmacy and restaurant on the ground floor; that it was intended that customers for the accessory stores in office building districts be limited to employees within the office buildings and that a construction of stores designed to attract outside customers would be in violation of this ordinance. Asked if he thought stores whose customers were limited to employees within the office building would be able to survive financially, he stated: "I would think a newsstand would, or a barber-shop or candy store or pipe and tobacco shop." He admitted that the zoning ordinance as applied to other office building districts did not limit the use of property therein to office building structures only. On March 28, 1961, at the conclusion of this hearing on the motion, the trial court made findings as follows:

"That said ordinances * * * adopted, as of February 13, 1961, are not in compliance with nor do they constitute a good faith attempt to comply with the decision heretofore made in this case and the same are even more unreasonable, confiscatory, capricious and arbitrary than the original zoning provisions heretofore struck down by this Court * * *.

"That the only logical, plausible or reasonable explanation for the action of the Village * * * is a belief on the part of the governing authorities of said Village that it is within their province, under the state statutes authorizing zoning * * *, to protect the businesses surrounding the plaintiffs' property from competition.

"The Court finds * * * that the policies and philosophy of zoning of the Planning Engineer of the Planning Commission of the Village of Edina, in the matter of limitation of competition, have dominated and controlled the action of the Village * * * with respect to the zoning of the Pearce property; said philosophy being set forth in Exhibit A, dated January 31, 1961, attached to and made a part of the Affidavit of Josiah E. Brill in connection with said Motion. * * *

"The ideas set forth in the above described Memorandum on methods for restraining competition with Southdale are clearly and plainly carried out by the actions of the Village Council with respect to the Pearce property. Nor has any good reason been given by the defendant for its failure to permit community stores on the larger tract of the Pearce property.

"That the ordinance of February 13, 1961, amending the office building zoning ordinance and making it applicable to the larger tract of the plaintiffs was so worded and devised that the Court finds it a fact that it indicates an intention on the part of the Village of Edina to so restrict the use of the plaintiffs' larger tract as to prevent competition between the owners of the plaintiffs' larger tract and other owners of commercial property in the vicinity * * *.

"The said office building zoning district as applied to the plaintiffs' tract prevents the use of more than a very small fraction of the plaintiffs' property for any commercial use outside of an office building to the point where such commercial use is utterly insignificant and substantially valueless. That the said office building zoning district includes the large tract of land bounded by France Avenue South, West 64th Street, Valley View Road, and West 66th Street, which tract is owned by the same interests as most of the property surrounding the plaintiffs' property, but in that particular tract not only are office buildings permitted but there is also permitted the use of said property for what is denominated regional shopping. With respect to said regional shopping district, it is provided, 'property located in a regional shopping district may be used for any purpose permitted in the community store district.' This discriminatory action, as between the land above described belonging to competitors of the plaintiffs, * * * deprives the plaintiffs of equal protection of the law. No justification whatsoever was furnished to the Court to explain this discrimination, making it evident to the Court and the Court finds it a fact that the purpose of the rezoning of the plaintiffs' property was to prevent legitimate competition.

"The Court finds it a fact that the limited use of the plaintiffs' property for office building space would prevent the use of the larger

portion of the plaintiffs' tract for any purpose whatsoever in this, that only a small portion, if any, of the plaintiffs' larger tract could in the present state of the market, regarding office building space, find a buyer for such use * * * and the remainder of the tract would remain idle.

"The Court further finds it a fact that the provision against advertising merchandise on an office building or the windows thereof with respect to such limited commercial uses as authorized under said office building ordinance as applied to the plaintiffs' tract, was designed to prevent competition between such commercial enterprises and the other business enterprises in the area.

"That the provisions in said * * * ordinance by which the Village Council reserves the right by special permit to allow further commercial uses than those expressly authorized * * * are illusory and without protection to the plaintiffs. This is especially true, because no standards are set up in said ordinance which will protect the rights of an applicant from further arbitrary action."

In its conclusions the court determined that (1) the defendant's actions in restricting the use of plaintiffs' tract and in refusing to zone it for community store districts were arbitrary, confiscatory, discriminatory, and void; (2) plaintiffs were entitled to use their property for the purposes authorized within the *community store district* classification, and the village was ordered to approve the petition to rezone it accordingly; and (3) with respect to the smaller tract the defendant was directed to revise the zoning ordinance to permit a commercial use thereof which would not unduly increase traffic surrounding the triangle. The court concluded further that, while plaintiffs had been compensated for damages to the triangular parcel at the time York Avenue was extended through a portion thereof, such damages did not cover the full value thereof, since in substance it had been confiscated by virtue of zoning restrictions now applicable thereto.

In a memorandum the trial court set forth the following:

"Where a property is almost completely surrounded by commercial properties (since the decision in this case last year another large retail store has been erected next to the Tait store by Sears Roebuck

Company) and plaintiffs' property is a peninsula in the commercial area, it is impossible to understand how any fair-minded person could justify such discrimination. It goes without argument that zoning laws deny property owners the freedom to use their property as they may desire, and unless they can be justified in the interest of public health, safety, morals or welfare they should be set aside. Zoning laws or the improper application thereof cannot be justified to prevent competition or create monopoly nor for misguided social or economic planners who wish to tell property owners in exactly what kind of business they may engage.

"Counsel for defendant argues that wrongful motives of zoning authorities are insufficient grounds to set aside such a law. It is not the motive that makes it invalid but the effect fortified by the fact that no justifiable reason within permissible legal limits has been shown by the evidence. The buffer area ground was proven fallacious by their own act of establishing a commercial zone north of 66th Street. The strip zone or blight area argument does not hold water, as plaintiffs' property and two small pieces adjacent thereto are the only ones remaining and the zone could not readily be extended beyond Lake Cornelia.

"A plat may demonstrate the foregoing to some extent, but pictures or a personal view of the area would remove the last vestige of a doubt. The traffic problem was eliminated by the testimony of experts. The evidence shows that the large surrounding area to be served amply justifies the addition of more commercial property.

"Defendant's counsel formerly argued that financial loss to the property owner was immaterial but now argues that there is an insufficient showing of property loss, if any, to plaintiffs to support this action.

\* \* \* \* \*

"As previously stated, 'The courts must zealously guard the legislative prerogative where it is properly exercised, the courts yet remain the only protection of the citizen against unreasonable, arbitrary and capricious action. The individual citizen deserves careful consideration and protection.'

"For the reasons and authorities stated in the memorandum of September 28, 1960, and the foregoing, this court must hold that the second ordinance is just as arbitrary, discriminatory, capricious, unreasonable and invalid as the one originally challenged; in fact, in many respects it is even more objectionable because of its restrictive uses, which are not imposed on the other office building zones."

On October 26, 1960, judgment was entered pursuant to the court's order of April 11, 1960, as amended September 28, 1960, and October 24, 1960; and on April 21, 1961, judgment was entered pursuant to the court's order of March 28, 1961. Defendant's appeal is from these judgments.

■ Well-established principles require affirmance of the judgments from which this appeal is taken. Municipal zoning ordinances affecting interests in real property are authorized only by virtue of an exercise of the police power of a municipality, and must be in the interests of public health, safety, or welfare. Hawkins v. Talbot, 248 Minn. 549, 80 N. W. (2d) 863; Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363. They are invalid where they bear no relationship to such public interests, Gunderson v. Anderson, 190 Minn. 245, 251 N. W. 515; or where it is established that they are discriminatory as applied to a particular situation. State v. Northwestern Preparatory School, Inc. 228 Minn. 363, 37 N. W. (2d) 370; see, State v. United Parking Stations, Inc. 235 Minn. 147, 151, 50 N. W. (2d) 50, 53, 29 A. L. R. (2d) 852. They cannot rest upon an intent to protect enterprises from competition in some particular district; or to create monopolies therein; or to make certain areas subservient to others. Dobbins v. City of Los Angeles, 195 U. S. 223, 25 S. Ct. 18, 49 L. ed. 169; Pacific Palisades Assn. v. City of Huntington Beach, 196 Cal. 211, 237 P. 538, 40 A. L. R. 782; Charnofree Corp. v. City of Miami Beach (Fla.) 76 So. (2d) 665; State ex rel. Killeen Realty Co. v. City of East Cleveland, 108 Ohio App. 99, 153 N. E. (2d) 177; Linden Methodist Episcopal Church v. City of Linden, 113 N.J.L. 188, 173 A. 593; 58 Am. Jur., Zoning, § 72. They are not valid if enacted primarily in adherence to esthetic concepts of some municipal planning commission. Olsen v. City of Minneapolis, 263 Minn. 1, 115

N. W. (2d) 734; State ex rel. Lachtman v. Houghton, 134 Minn. 226, 158 N. W. 1017, L. R. A. 1917F, 1050; Jefferson County v. Timmel, 261 Wis. 39, 51 N. W. (2d) 518; West Brothers Brick Co. v. City of Alexandria, 169 Va. 271, 192 S. E. 881; Siegel v. Adams (Fla.) 44 So. (2d) 427; 58 Am. Jur., Zoning, § 30.

That there may be disagreement as between experts with reference to the purpose or the effect, or the need for a particular zoning ordinance; or that the opinions of some of such experts support the viewpoint of the municipal body adopting the ordinance, does not compel a finding that it is reasonable and valid. La Salle Nat. Bank v. County of Cook, 12 Ill. (2d) 40, 145 N. E. (2d) 65; Gunderson v. Anderson, *supra*; see, Kiges v. City of St. Paul, *supra*. Where evidence reasonably supports a finding that the action of the municipality in enacting a zoning ordinance has been in excess of its authoritative power under the above principles, the court should not hesitate to hold the ordinance invalid. Gunderson v. Anderson, *supra*; State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. ed. 210; Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 387, 47 S. Ct. 114, 118, 71 L. ed. 303, 310.

In deciding these issues, the court may draw inferences from the evidence submitted and base findings thereon as in other cases. Gunderson v. Anderson, *supra*; Kiges v. City of St. Paul, *supra*. It may weigh the credibility of witnesses, and where their testimony establishes that factors relating to health, safety, or public welfare had no valid application in the adoption of a zoning ordinance, determine that it is invalid. Patton v. City of Bellingham, 179 Wash. 566, 38 P. (2d) 364, 98 A. L. R. 1076; and see, Gunderson v. Anderson, *supra*; Perry Trading Co. v. City of Tallahassee, 128 Fla. 424, 174 So. 854, 111 A. L. R. 463. It may consider the uses or classifications of property adjacent to that involved in the proceedings, even though the former may not be in the municipality whose ordinances are challenged, and if it is apparent that such ordinances have resulted in surrounding property by commercial or industrial operations prohibited to it, determine that the ordinances are invalid as applied thereto. Rowland v. City of Racine, 223 Wis. 488, 271 N. W. 36; City of Pleasant Ridge v.

Cooper, 267 Mich. 603, 255 N. W. 371; see, Duffcon Concrete Products v. Borough of Cresskill, 1 N. J. 509, 64 A. (2d) 347. It may give consideration to gross differentiations in the valuation of property resulting from separate and distinct zoning classifications in deciding whether the action of the municipality in adopting the ordinance was arbitrary or unreasonable. State v. Miller, 206 Minn. 345, 288 N. W. 713; Reschke v. Village of Winnetka, 363 Ill. 478, 2 N. E. (2d) 718; People ex rel. Kirby v. City of Rockford, 363 Ill. 531, 2 N. E. (2d) 842; Strain v. Mims, 123 Conn. 275, 193 A. 754; Mater v. Dover, 97 N. H. 13, 79 A. (2d) 844; Kaplan v. City of Boston, 330 Mass. 381, 113 N. E. (2d) 856; Senefsky v. City of Huntington Woods, 307 Mich. 728, 12 N. W. (2d) 387, 149 A. L. R. 1433; Robyns v. City of Dearborn, 341 Mich. 495, 67 N. W. (2d) 718.

On appeal to this court, our functions are the same as in all cases involving fact issues. They require that all evidence submitted in proceedings involving the validity of a zoning ordinance be given full consideration in determining whether the evidence adequately supports the court's findings. Kiges v. City of St. Paul, *supra*; Olsen v. City of Minneapolis, *supra*. The familiar rule that such evidence must be considered in the light most favorable to the prevailing party is likewise applicable. Kiges v. City of St. Paul, *supra*; Olsen v. City of Minneapolis, *supra*. While this court is bound to recognize the validity of legislative enactments where the matter of discretion is involved, at the same time the duty rests upon it to insure that such enactments are within such discretionary power rather than an arbitrary or discriminatory exercise of the legislative prerogatives, particularly where such enactments destroy valuable property rights of citizens guaranteed protection under the due process and equal protection clauses of the state and Federal constitutions. See, City of St. Paul v. Dalsin, 245 Minn. 325, 71 N. W. (2d) 855; State ex rel. Lachtman v. Houghton, 134 Minn. 226, 158 N. W. 1017.[1]

---

[1]In State v. Modern Box Makers, Inc. 217 Minn. 41, 49, 13 N. W. (2d) 731, 735, where the court gave recognition to the rule that if the reasonableness of a zoning ordinance is debatable the courts will not interfere therewith, it was stated that such rule was applicable only "so long as the

■ Examination of the evidence here with these principles in mind indicates abundant support for the findings by which the court determined that the ordinances adopted by defendant February 13, 1961, were not in compliance with, nor a good-faith attempt to comply with, the court's decision, and that they were "even more unreasonable, confiscatory, capricious and arbitrary than the original zoning provisions heretofore struck down by this Court." Such evidence clearly establishes that the new ordinances bear no valid relationship to issues of public welfare, health, or safety, and when it is considered that the entire area surrounding plaintiffs' property is presently in use or zoned for commercial purposes identical to those denied plaintiffs for their property, the underlying design of defendant to protect present enterprises in the area from competition is clearly revealed. Its zoning ordinances as they relate to plaintiffs' property would render it practically valueless for many years. Its actions in denying plaintiffs the right to use their property for the same purposes and in the same manner permitted for other properties in the area constitute a complete and willful disregard of the district court's decision herein. Likewise, its failure to adopt ordinances under which the triangular parcel would be permitted some commercial use has resulted in a complete taking or condemnation of this property without compensation in direct violation of Minn. Const. art. 1, § 13.

It follows that the judgments entered October 26, 1960, and April 21, 1961, from which the present appeal is taken, must in all respects be affirmed.

The case is remanded with directions that the district court insure compliance with its decision of April 11, 1960, as amended September 28, 1960, and October 24, 1960, wherein it determined that plain-

---

regulation in question is not shown to be clearly *unreasonable and arbitrary,* and operates *uniformly* upon all persons similarly situated in the particular district, * * *." (Italics supplied.) This limitation of the rule was also recognized in State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 70 N. W. (2d) 404. Where, as here, a zoning ordinance is discriminatory and designed to restrict competition, and has no valid relationship to factors of health, safety, or general welfare, the rule would have no application.

tiffs were entitled to use their upper parcel for community store purposes as defined in defendant's zoning ordinances of July 24, 1959, the date of plaintiffs' petitions for such classification; and wherein it determined that plaintiffs were entitled to use their triangular parcel for commercial uses of the kind which would not unduly increase the traffic surrounding it; and that the district court retain jurisdiction herein for all such purposes.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.